GEORGIANNA J. GURNEY *vs.* JOHN A. TENNEY & others.

Middlesex.　November 11, 1907. — February 28, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Deceit. Conspiracy. Pleading, Civil,* Declaration. *Sale. Practice, Civil,* Exceptions, Conduct of trial.

The declaration in an action of tort against three persons alleged that each of the three defendants separately made false and fraudulent representations of facts to the plaintiff, knowing them to be false, that he, being ignorant of their falsity, relied thereon and consequently was damaged, contained in its last paragraph the allegation that the representations " were made by the defendants upon an understanding between themselves as a conspiracy for the sole purpose of deceiving the plaintiff," and concluded with the statement, " For which the plaintiff brings this action against the defendants as conspirators to recover his money back." *Held,* that the allegations of conspiracy were not the gist of the action, but that the right of the plaintiff to recover rested upon the damage wrongfully inflicted upon him by the tortious acts of the defendants.

In an action of tort for deceit against three persons, there was evidence tending to show that each defendant made false representations of facts to the plaintiff, knowing them to be false and intending that the plaintiff should act upon them, that the plaintiff, not knowing the representations to be false, did so act and consequently was damaged. There was a verdict against all three defendants, one of whom alone excepted to a refusal by the presiding judge to direct a verdict in his favor because of a lack of evidence of a conspiracy among the defendants. *Held,* that, the representations of the excepting defendant being actionable, the plaintiff was entitled to recover against him quite apart from any joint plan to defraud on the part of all the defendants.

Representations by one who is a subscriber to the stock of a corporation organized for the purpose of manufacturing and selling a patented invention, that he himself had invested $2,000 in the stock, that the investment was paying him twelve per cent, that the corporation already was on a paying basis and owned real estate, and that its treasurer was a man of wealth, ability and character, if they are false, are known to the person making them to be false, and are made to a woman who did not know them to be false and for the purpose of inducing her to buy stock in the same corporation, are actionable if the woman, relying upon them, buys the stock and it proves to be of no value, since they are false representations of facts and not mere seller's or promoter's talk or representations of something to be done in the future.

An action of tort for deceit against three defendants was tried with an action against one of the three of the same nature, brought by the same plaintiff and arising out of the same state of facts, and there was evidence introduced which it was proper for the jury to consider against all three defendants if there was a conspiracy or combination among them to defraud the plaintiff, but which it was improper for them to consider if there was no conspiracy or combination. The presiding judge refused to rule at the request of one of the defendants that

there was no evidence of such conspiracy or combination which included him and left the matter to the jury to determine under appropriate instructions. There was a verdict for the plaintiff against all the defendants. The defendant who made the request excepted to the refusal of the presiding judge to grant it. There was evidence tending to show that the plaintiff, a dressmaker, upon going to one of the other defendants on other business, on that defendant's own motion was advised to invest in the stock of a certain corporation, and to see the treasurer of the corporation, (another of the defendants but not the one excepting) and that, in giving the advice, the first defendant made various representations of fact with regard to the treasurer and the company and accompanied the plaintiff to him ; that, at a later interview, the same defendant suggested that the plaintiff go to the excepting defendant, an oculist, for treatment for her son, stating that such defendant had invested in the stock of the corporation ; that the plaintiff went to see the excepting defendant as suggested and he, on finding out from whom she came, while treating her son, strongly urged the plaintiff to invest in the stock of the corporation ; that the plaintiff had several interviews, first with one defendant and then with another, that all of the defendants were subscribers for the stock of the corporation which was in need of working capital, all were well acquainted with one another, and that all of them made practically the same representations to her, which were false. *Held*, that there was evidence warranting a finding that there was a conspiracy or combination among the defendants to defraud the plaintiff.

An exception to a refusal by the judge presiding at a trial to give a ruling in the language requested will not be sustained where the instructions given on the subject to which the request related were full, correct and appropriate.

Tort for deceit. Writ in the Superior Court for the county of Middlesex dated September 9, 1903.

There were three defendants, Tenney, Conant and Robinson. The declaration alleged that the plaintiff went to Conant, who held herself out as a "spiritualist medium" and represented to the plaintiff that she could tell her what she would do in the future in business which would add to her comfort and fortune in a financial way ; that, in the course of a number of interviews and "readings," Conant volunteered to make and did make to the plaintiff certain representations of facts regarding a "very valuable invention in regard to electric lighting," then owned by a corporation organized for the purpose of manufacturing the invented article, and that she herself had invested in preferred stock of the company ; and that she stated that Robinson was a man of wealth and strict integrity and a heavy investor in the company, and that Tenney also was a stockholder; that thereupon, believing Conant, the plaintiff interviewed Tenney and Robinson, each of whom made similar statements; that all the statements made by the defendants were "false and fraudulent

as the defendants well knew," were made with the intention of deceiving the plaintiff and of inducing her to invest money in the company, that she was ignorant of the falsity of the statements and believed them to be true, and invested money in the stock which proved to be worthless. The closing paragraph of the declaration, mentioned in the opinion, was as follows: " And the plaintiff says that all the statements made in regard to the said stock of said company and in regard to the business thereof, the purchase of land on which to erect a factory, the company being the owner of such a valuable electric lamp, the great saving of electricity in giving more light, were false and fraudulent and then known by defendants to be false and fraudulent, and were made by the defendants upon an understanding between themselves as a conspiracy for the sole purpose of deceiving the plaintiff, and she was deceived thereby, and thereby defrauding the plaintiff out of her money for their mutual benefit by the purchase of said stock. For which the plaintiff brings this action against the defendants as conspirators to recover her said money back."

The case was tried at the same time with another one of the same nature against Robinson only before *Bishop*, J., and the plaintiff's testimony tended to establish the following facts: She was a dressmaker and, having lost a son and having read in the Banner of Light, a paper published by spiritualists, what purported to be messages and communications of the defendant Conant from the "spirit world," she went to interview her. There were a number of successive interviews, at the first of which Conant " gave the plaintiff messages from her son," and told her that she (the plaintiff) was in very poor health and gave her some medicine. At the second interview, she gave the plaintiff "more messages," told her she could never do any more work and asked her why she did not invest her money " where it would give large returns," and asked her if she knew about the Continental Electric Company. In the course of subsequent interviews, Conant urged the plaintiff to invest her money in stock of that company, and advised her to go to see Robinson, the treasurer of the company, representing that Robinson was a wealthy man, and that he had put a good deal of money into the business of the company, that the company

owned land in Pembroke, and had more orders for electric lights than it could fill, that she, Conant, had put $2,000 into the preferred stock of the company, and was drawing twelve per cent on the investment.

Finally, because of Conant's urging, the plaintiff went with her to meet Robinson, who in detail told the plaintiff that the electric light which the company was manufacturing was a very valuable article, and in detail represented to the plaintiff in that and subsequent interviews that he, Robinson, was a wealthy man, and had put a great deal of money into the company, in both preferred and common stock, that the company had orders to furnish lights for the South Station in Boston, then in the process of construction, for the streets of Boston, for Macy's store in New York City, and for other large establishments, that it had more orders than they could fill in six months, had secured land in Pembroke, was on a paying basis, and was paying twelve per cent; that the defendant Conant had bought preferred stock, and that the defendant Tenney had bought preferred stock.

About a week after her interview with Robinson, the plaintiff had another " sitting " with the defendant Conant at which, the plaintiff chancing to remark that she must not stay long as her son Rudolph was home from Technology because of a steel filing in his eye, and telling Conant upon inquiry that her family physician was treating the injury, Conant said she should go to a specialist, and stated that the defendant Tenney was one of the finest oculists in Boston, and also that he was interested in the Continental Electric Company. The next day the plaintiff with her son Rudolph went to see the defendant Tenney.

According to the testimony of the plaintiff and her son Rudolph, at the first interview with Tenney, the first question he put to the plaintiff was, " Who sent you here ? " The plaintiff informed him that the defendant Conant had sent her. While examining Rudolph's eye, Tenney asked him what course he was pursuing at Technology, and, being answered " Naval architecture," Tenney told him he should study electricity, and presently asked the plaintiff and her son if they had heard of " the new invention," from which the conversation turned to the subject of the Continental Electric Company and investment therein, Tenney, at many succeeding interviews, telling the

plaintiff that she would make no mistake to invest her money in the company, representing to her that he himself had invested $2,000 in the preferred stock of the company, that the investment was paying him twelve per cent, that the company was already on a paying basis and owned land in Pembroke, and that the defendant Robinson was a man of wealth and of ability and character.

Repeated interviews with Robinson and Conant and Tenney followed one another, and finally the plaintiff invested $6,000 in preferred and common stock of the Continental Electric Company.

Further evidence introduced by the plaintiff tended to show that the representations of all the defendants above set forth were false and that the stock that she purchased was worthless.

It further appeared that all of the defendants were subscribers for stock of the Continental Electric Company, which had been formed to take over the assets of the Higham Electric Company, upon its becoming insolvent, and that the latter company had been formed to take over the assets of the Higham Electric Light Company for a similar reason. Conant and Robinson had invested money in the two previous companies.

Several dividends of twelve per cent had been paid to the plaintiff on the personal check of the defendant Robinson after her investment, but the company had made no earnings.

Evidence of the defendant Tenney tended to controvert that of the plaintiff.

At the close of the evidence the defendant Tenney requested the following rulings :

" 1. Upon all the evidence, the plaintiff cannot recover against the defendant, John A. Tenney.

" 2. If the defendant Tenney ever represented to the plaintiff that the lamp was a very valuable invention as it would effect the saving of thirty-three and one third per cent of electricity in giving the same light that any lamp then in use would give, that he considered it to be a very valuable invention, and so much so that he had invested $2,000 of his own money in the preferred stock of the Continental Electric Company, that the defendant Robinson had invested a large amount of money in said company, and that the defendant Conant had invested $2,000 in the preferred

stock of said company, that said Robinson was a wealthy man, also a man of the highest integrity and was not obliged to carry on any business in order to make a living, that he had an income without, that all money thereafter paid in was to be used for the sole purpose of building a factory and manufacturing and putting upon the market said patent lamps, all of said representations were either immaterial, 'dealer's talk' or expressions of opinion and are not actionable.

"3. There is no evidence of a conspiracy to which the defendant Tenney was a party.

"5. Upon all the evidence the defendant cannot be held liable for any representation made by the other defendants, or either of them.

"6. If the defendants or either of them ever represented to the plaintiff that the defendant Conant could give the plaintiff a true reading and could tell her past and what she should do in the future in business and other ways which would add to her comfort and fortune in a financial way, that the defendant Conant and the defendant Tenney were stockholders in the Continental Electric Company and had each invested $2,000 of their own money in the preferred stock of the same, that the defendant Robinson was a man of strict and of the highest integrity, that he was very wealthy, had plenty of money, was a wealthy man, that he was not obliged to carry on any business, that he possessed enough property to live on the income, that his business as treasurer and manager of the company was only a pastime, that he put in his money merely as an investment and that he had invested a large amount of money in the company, that the lamp was a valuable invention, as it would effect a saving of thirty-three and one third per cent of electricity in giving the same light that any lamp then in use would give, and that all money thereafter to be paid in was to be used for the sole purpose of building a factory and manufacturing and putting upon the market said patent lamps, all of said representations were either immaterial, 'dealer's talk,' or expressions of opinion and not actionable."

The presiding judge refused to rule as requested, but did rule that "if an act done by [one of the defendants alone] does not constitute a cause of action, a like act is not rendered actionable

by being done in pursuance of a conspiracy." He also charged the jury in part as follows:

"There is a distinction in law between statements of fact and statements of belief, opinions, judgment. If one person makes statements to be of facts to another, which are false, and which the person making them knows to be false, or has ground to know are false, and these statements operate to induce the person to whom they are made to put his money into a transaction on the faith of it, and these statements are of matters of fact, there can be recovery for the damage sustained by them. But there is another class of statements which are not statements of facts; they are opinions, they are beliefs, they are expressions of one's judgment. The law says that recovery cannot be had for these; and these statements as they usually come into cases are largely concerned with possibilities and likelihoods and the state of things in the future, and the law says that they are expressions of opinion: are expressions of what a man believes and thinks, and there can be no recovery for those. . . . It is not for the court to say whether both of these two things are included in any given case or not; it is for the jury to say. But often we have a case where the evidence tends to show statements of fact which are relied upon by the plaintiff as false and deceitful and as fraudulent and as tending to induce transactions to be made, and which the plaintiff says was the inducement which operated to cause him to part with his money, — those statements of fact; and, at the same time, statements in regard to expectations, to beliefs, to what is going to be. It is not a ground of action for a man to say to another man, ' I believe this will be, I expect things of this enterprise ' — ' I believe I can make my fortune out of it, and that you can if you will invest in it.' If that is all there is to it, however without foundation such expectations and such beliefs and such operations of the man's mind, who makes those assertions, may be, that is relegated by law to the domain of assurances, expectations, beliefs. But if a man says, ' this property which I wish you to buy ' — I am not now speaking of this case, but I am trying to illustrate this case — ' this property which I wish you to buy is situated in such a place, it is such and such property,' describes it, ' and I bought it for so much; I paid so much

money for it,' and goes on with a list of statements of fact about it, if those statements of fact are false, if the man to whom those statements were made believes them and relies upon them and puts in his money on the faith of them, and they turn out to be false and known to be so to the person making them, and with the purpose of obtaining money upon the strength of them, an action will lie to recover damages for the loss.

"I have some requests in this case from the defendants, [referring to defendant Tenney's second and sixth requests,] which deal with facts assumed. These requests refer to this matter. I will not read them unless counsel desire me to go into this matter more in detail than I have done, but deem it sufficient to say to you what I have said as to the distinction between the two classes of representations. . . .

"I have already said that in their nature there is no difference between the two suits being tried before you, they are for deceit, for obtaining money by false representations relied upon. There is a difference in this, and it is an important difference; the acts and statements of all three of these defendants have been put into the case, the plaintiff has gone into the conduct, statements and acts of Robinson, Tenney and Conant. Now, if there was no combination between them, no conspiracy, the acts and conduct of one of these persons cannot affect in evidence the other or others. But if there was a combination, if there was joint action, if there was a result to be obtained which they were striving for with a common purpose, a connected and combined action, so that you shall say there was a conspiracy between these three persons, or any two of them, to do this, then the law says that the acts and sayings of each one are admissible and may be considered as affecting the other or others. So that you must determine, in order properly to try the second case, whether there was conspiracy; and a conspiracy is a union of action, a purpose to accomplish an end which shall be unlawful in its character. If you do not find that, the only evidence which you can consider against each of these defendants is that relating to himself alone, what he has said and done, and the case upon all the evidence as it affects him, and not as it develops what the others or another one of the others has said or done. And I will add

this, gentlemen, as requested by the defendant Tenney: it also is true that if the act done by one alone does not constitute a cause of action, a like act is not rendered actionable by being done in pursuance of a combination or conspiracy. That is, several persons acting together for a lawful and proper purpose does not make the act unlawful. The nature of the thing, whether it is alone by one person, or by several together, must be the accomplishing of an unlawful result by deceit."

The bill of exceptions states that to the above rulings and refusal to rule the said John A. Tenney excepted. There was a verdict against all of the defendants.

The case was submitted on briefs.

*W. H. Thorpe*, for the defendant Tenney.

*G. A. A. Pevey, F. W. Dallinger & W. Shuebruk*, for the plaintiff.

BRALEY, J. The allegations of conspiracy in the closing paragraph of the declaration are not the gist of the action, as the right to recover rests upon the damage wrongfully inflicted upon the plaintiff by the tortious acts of the defendants. *Parker v. Huntington*, 2 Gray, 124. While it does not appear that the representations of one defendant more than those of another influenced the plaintiff, yet the case is before us on the exceptions of Tenney alone, and if the representations made by him were actionable, the plaintiff would be entitled to recover quite apart from any joint plan to defraud. In his interviews with her, after being informed that she had money to invest, he stated in substance that he had invested in the preferred stock of the company, whose treasurer was a man of character, ability and wealth, and that the company was then on a paying basis earning twelve per cent, and owned land upon which a large factory for the manufacture of lamps was to be built. The defendant's argument asks us to treat these representations as mere expressions of matters of opinion, or as partly promissory. But these positive statements were material assertions of the value of the property, upon which the jury could say that for his personal benefit he intentionally persuaded and induced the plaintiff to buy its stock by falsely representing in various ways that the company was financially sound and well managed, and that it owned real estate soon to be used for manufacturing

purposes. *Collins* v. *Denison*, 12 Met. 549. *Cole* v. *Cassidy*, 138 Mass. 437. *Pike* v. *Fay*, 101 Mass. 134, 137. *Lewis* v. *Jewell*, 151 Mass. 345. *Andrews* v. *Jackson*, 168 Mass. 266. *Weeks* v. *Currier*, 172 Mass. 53. *Arnold* v. *Teel*, 182 Mass. 1. *Lee* v. *Tarplin*, 183 Mass. 52. When employed as a means to this end, they cannot be classed as mere over statements of value, which under one form or another have been designated as mere seller's or promoter's talk, nor of something to be done in the future; and therefore the defendant's first request for rulings was rightly denied. *Whiting* v. *Price*, 172 Mass. 240, 241. *Lee* v. *Tarplin*, *ubi supra*, p. 57.

The third request asked for a ruling that the evidence failed to establish any combination to defraud the plaintiff. It is manifest from their evidence that the defendants as stockholders had a common interest and purpose in the promotion of the success of a company in immediate need of working capital, which could be obtained only from money received from the sale of its preferred and common stock. If, after this motive for their conduct is disclosed, the course of affairs is followed from the time the plaintiff first met the defendant Conant, by whom she was sent to Tenney, and who advised her to see Robinson, and they all three respectively suggested and urged the purchase of the stock by substantially similar statements, a legitimate inference of a concert of action between them to persuade the plaintiff to make the investment would be well warranted. It also would follow that, if they acted jointly, each would be liable for any actionable representations made by the others by which the wrong was finally accomplished. *Spaulding* v. *Knight*, 116 Mass. 148. *Commonwealth* v. *Scott*, 123 Mass. 222, 235. *Brinkley* v. *Platt*, 40 Md. 529. Both issues were matters of fact for the jury to decide under suitable instructions, and the exceptions to the refusal to give the third and fourth requests are not well taken.

The second and sixth requests asked for rulings that certain of the representations of each and all of the defendants were not actionable. But the refusal to instruct in the language requested affords no ground of exception, as the presiding judge fully, correctly and with appropriate illustrations directed the attention of the jury to the distinction between representations

which they might find to be material, and those which were merely expressions of opinion. *Graham* v. *Middleby*, 185 Mass. 349. *Andrews* v. *Jackson, ubi supra.*

*Exceptions overruled.*