408 Mass. 162 (1990)
556 N.E.2d 1025
THERESA KYTE & another[1]
vs.
PHILIP MORRIS INCORPORATED.
Supreme Judicial Court of Massachusetts, Middlesex.
December 7, 1989.
July 25, 1990.
Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.
Hadrian R. Katz of the District of Columbia (Henry C. Dinger with him) for the defendant.
Edward Greer for the plaintiffs.
James M. Shannon, Attorney General, & Susan Papaneck McHugh, Assistant Attorney General, for the Commonwealth, amicus curiae, submitted a brief.
Gary Van Inge & Eric A. Nissen, for the estate of George Kotler, amicus curiae, submitted a brief.
Alan B. Morrison of the District of Columbia, for American Cancer Society & others, amici curiae, submitted a brief.
WILKINS, J.
In the spring of 1987, the plaintiffs, Theresa Kyte and Sean Cann, each through a parent, brought this action against Philip Morris Incorporated (Philip Morris), alleging that Philip Morris was liable to them on several theories because they sustained injuries from the consumption of cigarettes that had been manufactured by Philip Morris and *164 sold to them while they were minors. This case is before us because a Superior Court judge, after denying Philip Morris's motion for summary judgment, reported the propriety of his ruling to the Appeals Court (Mass. R. Civ. P. 64, 365 Mass. 831 [1974]), and we allowed the plaintiffs' application for direct appellate review.[2]
We summarize uncontroverted facts appearing in the summary judgment record. Later in this opinion, we set forth additional undisputed facts bearing on particular issues. Theresa Kyte smoked her first cigarette at the age of twelve, in order to "look more grown up [and] to be like [her] friends." Over the next six years, Kyte's cigarette consumption increased to as much as two packs of cigarettes a day before falling to an average of one pack of cigarettes every day. Kyte has been unable to stop smoking despite "twenty to fifty" attempts to do so. Sean Cann began smoking cigarettes out of "curiosity" during the summer of 1985, when he was fifteen years old. By the time the complaint in this case was filed, Cann was smoking approximately one-third to one-half a pack of cigarettes each day. Cann's three attempts to quit smoking have been unsuccessful. Each smoked Marlboro and Parliament cigarettes manufactured by Philip Morris. They claim that, as minors, they repeatedly purchased Marlboro and Parliament brand cigarettes at Store 24 convenience stores in violation of G.L.c. 270, § 6 (1988 ed.), which makes illegal the sale of tobacco in any form to a minor.[3] Because of physical responses to their smoking and because *165 of their addiction, the plaintiffs claim to have incurred medical expenses, pain and suffering, emotional distress, and a diminished capacity to carry out the normal activities of a minor. They seek monetary damages and equitable relief to prevent future illegal sales of cigarettes to minors in the Commonwealth.
The plaintiffs now assert four theories under which Philip Morris may be liable to them, even though it is conceded that Philip Morris did not sell its cigarettes to them directly. The plaintiffs claim that Philip Morris (1) engaged in a civil conspiracy with Store 24 to violate G.L.c. 270, § 6, (2) negligently entrusted cigarettes to them as minors, (3) was in breach of implied warranties under G.L.c. 106, § 2-314 (1988 ed.), and (4) engaged in a deceptive act in violation of G.L.c. 93A (1988 ed.). Philip Morris was entitled to summary judgment on the first two of these theories but not on the latter two.[4]
The summary judgment record shows that the plaintiffs, while minors, purchased cigarettes manufactured by Philip Morris from Store 24. They purchased no cigarettes directly from Philip Morris. Store 24 purchased all the cigarettes sold in its stores from wholesalers not owned by Philip Morris. For the purposes of summary judgment, we must assume the following: There is a pattern and practice in Massachusetts of selling Marlboro cigarettes to thousands of minors each year. Those sales represent a substantial portion of the sales of Marlboro cigarettes in Massachusetts. Philip Morris was on notice of this pattern and practice, and such sales were reasonably foreseeable. The plaintiffs are addicted to cigarettes and have thereby been injured.
The Superior Court judge reported his decision to the Appeals Court because "the denial of Philip Morris's motion for summary judgment so affects the merits of the controversy *166 and is of such general legal significance that the correctness of that ruling ought to be determined by the Appeals Court." "Such a determination," he stated, "may also save the time and expense of considerable discovery." The plaintiffs do not contend that they were given an inadequate opportunity in the Superior Court to prepare the record for summary judgment purposes and, in any event, may not properly so contend for the first time on appeal. First Nat'l Bank of Boston v. Slade, 379 Mass. 243, 244-245 (1979). See Mass. R. Civ. P. 56(f), 365 Mass. 825 (1974). The judge's comment that the time and the expense of discovery might be saved if Philip Morris is in fact entitled to summary judgment on the undisputed material facts is a fair characterization of the circumstances in which summary judgment should be entered despite the existence of numerous nonmaterial factual disputes that would be contested if the case were to be tried.
1. Civil conspiracy. Philip Morris is not liable to the plaintiffs for civil conspiracy. The plaintiffs concede that Philip Morris did not enter into any express agreement with Store 24. They claim, however, that Philip Morris's behavior shows a pattern of concerted conduct knowingly undertaken and sufficient to support a claim for civil conspiracy.
The plaintiffs' conspiracy count relies on two theories. They assert a "common design" theory under which it is claimed Philip Morris, in concert with or pursuant to a common design with Store 24, committed tortious acts, namely, sold cigarettes to minors in violation of law. The plaintiffs assert independently that Philip Morris gave substantial assistance to or encouraged Store 24's conduct, knowing that such conduct constituted a breach of duty to minor purchasers of Philip Morris cigarettes. These two approaches are expressed in Restatement (Second) of Torts § 876(a) and (b) (1979),[5] which the parties accept as stating the governing *167 principles of civil conspiracy in the Commonwealth. We shall not pause to determine whether the principles of § 876 and the law of the Commonwealth are, in all respects, in complete accord. See Gurney v. Tenney, 197 Mass. 457, 466 (1908) (alluding to concert of action theory similar to § 876[a]); Nelson v. Nason, 343 Mass. 220, 222 (1961) (following § 876[b]); Brown v. Perkins, 1 Allen 89, 98 (1861) (language similar to § 876[b]); Stock v. Fife, 13 Mass. App. Ct. 75, 82 n. 10 (1982) (commenting on inapplicability of § 876[b] in circumstances). See also Payton v. Abbott Labs, 512 F. Supp. 1031, 1034-1035 (D. Mass. 1981).
The record shows that there was no common design or concerted action between Philip Morris and Store 24. In the face of Philip Morris's uncontroverted record material, no inference of a common design could be justified. In addition to the undisputed fact that Philip Morris made no direct sales to the plaintiffs or to Store 24, the record shows the following additional facts. Philip Morris has no record of any complaint being filed regarding the sale of any Philip Morris tobacco product to any minor in Massachusetts by Store 24 or any other retailer. Philip Morris has no control over the entities that sell its products to retailers and consumers. Store 24 purchases all of its cigarettes from wholesalers, has contact with Philip Morris personnel only in regard to matters such as displays and the freshness of cigarettes being sold, and has never had any communication with Philip Morris concerning sales of cigarettes to minors. Against this, the plaintiffs argue that the well-known, widespread sales of cigarettes to minors in the Commonwealth justify an inference of an implied agreement between Philip Morris and Store 24 to promote those sales.
We do not deny that an inference of an implied agreement could properly be drawn from the conduct of two or more parties. See e.g., Orszulak v. Bujnevicie, 355 Mass. 157, *168 158-159 (1969) (jury could infer from two drivers' conduct an implied agreement to race); Nelson v. Nason, 343 Mass. 220, 222 (1961) (same); Attorney Gen. v. Tufts, 239 Mass. 458, 494 (1921) ("Common purpose may be inferred from concerted action converging to a definite end"). In Direct Sales Co. v. United States, 319 U.S. 703, 705-707 (1943), a tacit understanding was found based on a long course of consistent sales of huge quantities of morphine to a physician. By contrast, Philip Morris knew nothing about Store 24 and its illegal sales of cigarettes that would warrant an inference of concerted action. Philip Morris's affidavits stating that it had no knowledge of illegal sales by Store 24 remain uncontroverted. Philip Morris is entitled to summary judgment against the plaintiffs on the common design theory of conspiracy.[6]
The plaintiffs' claim of liability for civil conspiracy on the substantial assistance theory also fails because Philip Morris was unaware of any substantial role it played in Store 24's allegedly illegal sales. A general awareness that retail stores sell cigarettes to minors is not sufficient to show the level of knowledge that would give rise to liability for conspiracy. Evidence of the defendant's knowledge of its substantial, supporting role in an unlawful enterprise is required. See Halberstam v. Welch, 705 F.2d 472, 478 (D.C. Cir.1983); Payton v. Abbott Labs, 512 F. Supp. 1031, 1035 (D. Mass. 1981). See also Commonwealth v. Lauria, 359 Mass. 168, 172 (1971) (criminal conspiracy). The same uncontroverted documents that Philip Morris produced to show that it had no agreement with Store 24 also show that it had no specific knowledge that Store 24 sold cigarettes to minors. Without this knowledge, Philip Morris could not have been aware of any substantial role it had in Store 24's alleged illegal sales. *169 Philip Morris, therefore, is entitled to summary judgment in its favor on the plaintiffs' aiding and abetting theory.[7]
2. Negligent entrustment. Philip Morris was entitled to summary judgment on the negligent entrustment count. The record shows that Philip Morris did not sell or entrust any cigarettes directly to the plaintiffs. That fact, of course, would not absolve Philip Morris of liability if it supplied cigarettes to minors through a third person with whom it collaborated to make such sales. As we have said, however, there was no evidence of collaboration or agreement, express or implied, between Philip Morris and Store 24.
We have accepted the principle that, in particular circumstances, a supplier may be liable for harm caused after the supplier has knowingly placed property in the hands of an incompetent person. See Leone v. Doran, 363 Mass. 1, 13 & n. 3 (1973) (motor vehicle). See also Michnik-Zilberman v. Gordon's Liquor, Inc., 390 Mass. 6, 10-11 (1983) (sale of liquor to minor); Cimino v. Milford Keg, Inc., 385 Mass. 323, 326-328 (1982) (sale of liquor to intoxicated person); Restatement (Second) of Torts § 390 (1965). Our cases have not, however, held a manufacturer of a product liable in negligence simply because some third party unlawfully placed that product in the hands of a minor and, as a result, the minor or some other person was harmed.
The possibility that a third party will violate the law and unlawfully deliver a product to a person who should not have it does not by itself make the manufacturer of that product liable for any resulting harm. Manufacturers of motor vehicles or firearms and brewers of malt beverages, for example, are not subject to liability simply because they know that *170 their product may be sold to or used by persons who by law may not buy or use it. It would stretch common law liability concepts beyond reason if we were to impose liability on a manufacturer solely because some independent third person sold the manufacturer's product to one who by law is not permitted to use it.
The plaintiffs did not have to show privity of contract with Philip Morris, but they did have to produce record support to raise an issue of material fact as to whether Philip Morris supplied cigarettes to minors through Store 24. Philip Morris produced record support for the proposition that it did not. The plaintiff did not counter that material. Knowledge that retailers generally sell cigarettes to minors is not enough to show negligent entrustment by a manufacturer of cigarettes. Because the summary judgment record affirmatively shows that Store 24 did not supply cigarettes to minors on behalf of or by agreement with Philip Morris, judgment for Philip Morris was warranted on the negligent entrustment count.
Although the plaintiffs allege as part of their negligent entrustment claim that Philip Morris "knowingly" encouraged sales of Marlboro cigarettes to minors, they do not argue to us that Philip Morris is liable under the negligent entrustment count on some theory of negligent marketing or advertising. See Killeen v. Harmon Grain Prods., Inc., 11 Mass. App. Ct. 20, 28 (1980).[8] We take the plaintiffs at their word and do not consider how far, if at all, marketing that intentionally or negligently induced an incompetent to use a product could be the basis of a manufacturer's liability.[9]
*171 3. Implied warranty. Philip Morris was not entitled to summary judgment on the count alleging that it was in breach of the implied warranty that its products are "merchantable, fit for [their] intended use, free from defect, safe to consume and non-carcinogenic and non-addictive." We read this count to assert a breach of implied warranty based upon an alleged design defect. The plaintiffs state that their claim is not based on the proposition that all cigarettes are inherently defective, but rather on a claim that, because of their defective design, Philip Morris's Marlboro and Parliament cigarettes were inherently carcinogenic and addictive. We accept their characterization of their own claim which is consistent with the allegations of the breach of implied warranty count. We note, however, that the complaint does not spell out what the design defect was that made Marlboro and Parliament cigarettes carcinogenic and addictive.
There is simply no summary judgment record material bearing on the implied warranty count that shows that there is no dispute of material fact. Summary judgment for Philip Morris was, therefore, not warranted. The count does state a claim on which relief could be granted and thus is not subject to dismissal in the circumstances. See Stop & Shop Cos. v. Fisher, 387 Mass. 889, 891 (1983); Nader v. Citron, 372 Mass. 96, 98 (1977).
4. General Laws c. 93A. The plaintiffs' count based on G.L.c. 93A alleges only violations of that act due to Philip Morris's failure to comply with G.L.c. 270, § 6, and G.L.c. 266, § 91 (1988 ed.). The record, as we have said, shows that Philip Morris did not violate G.L.c. 270, § 6, through Store 24's unlawful sales of cigarettes to minors. The plaintiffs make no argument here based on G.L.c. 266, § 91, which concerns untrue, deceptive, or misleading advertising.
The plaintiffs now argue that Philip Morris's breach of implied warranty would qualify as a violation of G.L.c. 93A. Because we have concluded that summary judgment should not be entered on the implied warranty count, we decline to order summary judgment for Philip Morris on the plaintiffs' G.L.c. 93A count. We expect that the plaintiffs will move *172 to amend that count to refer to their implied warranty claims.
5. Federal preemption. Philip Morris argues that the plaintiffs' breach of implied warranty of merchantability claims are preempted by the Federal Cigarette Labeling and Advertising Act (15 U.S.C. §§ 1331-1341). That argument is founded on Philip Morris's view that the plaintiffs' warranty claims are based on the theory that the sale of standard, everyday cigarettes violates the implied warranty of merchantability. Our discussion of the nature of the plaintiffs' warranty claims shows, however, that the plaintiffs rely on a defect or defects specific to Philip Morris's Marlboro and Parliament cigarettes, and not on a claim that all cigarettes are bad. We do not understand Philip Morris to argue that, on the plaintiffs' implied warranty theory that focuses on alleged defects peculiar to Philip Morris cigarettes, there is a meritorious Federal preemption argument.
6. Disposition. Summary judgment for Philip Morris shall be entered on Count I (negligent entrustment) and Count II (civil conspiracy) of the plaintiffs' amended complaint. The order denying summary judgment to Philip Morris on the remaining counts (implied warranty and violation of G.L.c. 93A) is affirmed.
So ordered.
LIACOS, C.J. (concurring in part and dissenting in part).
I agree with the court that the judge acted properly in denying Philip Morris's motion for summary judgment as to the plaintiffs' implied warranty and G.L.c. 93A claims. However, because I believe that the judge also acted properly in denying the motion for summary judgment as to the plaintiffs' civil conspiracy and negligent entrustment claims, I write separately to express my views on those claims. As a consequence, I find it necessary to address whether the plaintiffs' State law claims have been preempted by 15 U.S.C. §§ *173 1331 et seq., the Federal Cigarette Labeling and Advertising Act.
1. Federal preemption. The United States Supreme Court has recognized several different situations in which Federal preemption principles will apply.[1] "The critical question in any pre-emption analysis is always whether Congress intended that federal regulation supersede state law." Louisiana Pub. Serv. Comm'n v. FCC, 476 U.S. 355, 369 (1986). See Palmer v. Liggett Group, Inc., 825 F.2d 620, 625-626 (1st Cir.1987). The starting point for a preemption analysis is the language of the Cigarette Labeling Act. In reviewing this language I am guided by a primary tenet of Federal preemption analysis, which states that Congress is presumed to "not intend to displace state law." Maryland v. Louisiana, 451 U.S. 725, 746 (1981). See Cipollone v. Liggett Group, Inc., 789 F.2d 181, 185 (3rd Cir.1986), cert. denied, 479 U.S. 1043 (1987) (Cipollone I); Palmer v. Liggett Group, Inc., supra at 625.
Section 1334 of the Act, entitled "Preemption," states that "(a) ... [n]o statement relating to smoking and health, other than the statement required by section 1333 of this title, shall be required on any cigarette package," and "(b) ... [n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising *174 or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter." The preemption provisions make no express mention of State law claims such as those presented by the plaintiffs. In order for this court to discern a congressional intent expressly to preempt all of the plaintiffs' State law claims, I believe that it must encounter language far more definitive than that which is presented in § 1334.
Section 1334 does not expressly preempt State law claims involving the relationship between cigarettes and health. This is the view of a number of Federal and State appellate courts which have similarly declined to divine such express preemption from the language of § 1334. See Pennington v. Vistron Corp., 876 F.2d 414, 418 (5th Cir.1989); Roysdon v. R.J. Reynolds Tobacco Co., 849 F.2d 230, 234 (6th Cir.1988); Palmer v. Liggett Group, Inc., supra at 185; Stephen v. American Brands, Inc., 825 F.2d 312, 313 (11th Cir.1987); Cipollone v. Liggett Group, Inc., supra at 185; Forster v. R.J. Reynolds Tobacco Co., 437 N.W.2d 655, 658 (Minn. 1989).
The issue remains as to whether Congress intended impliedly to preempt State law claims by passage of the Cigarette Labeling Act and, if so, to what extent. For the purposes of implied preemption analysis, I reiterate the presumption "that Congress in legislating does not intend to hobble the states in their regulation of matters of state concern." Id. at 658. Therefore, the intent impliedly to preempt must be clear. Pennington v. Vistron Corp., supra at 423. Forster v. R.J. Reynolds Tobacco Co., supra at 658. Furthermore, even when Federal preemption is implied, State law will be preempted only "to the extent it actually conflicts with federal law." Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 248 (1984).
I am aided in my endeavor by the statement of congressional purpose in § 1331 of the Act. Section 1331 states: "It is the policy of the Congress, and the purpose of this chapter, to establish a comprehensive Federal Program to deal with cigarette labeling and advertising with respect to any relationship *175 between smoking and health, whereby  (1) the public may be adequately informed that cigarette smoking may be hazardous to health by inclusion of a warning to that effect on each package of cigarettes; and (2) commerce and the national economy may be (A) protected to the maximum extent consistent with this declared policy and (B) not impeded by diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health."
The Cigarette Labeling Act represents Congress's response to the struggle between those interested in warning the public of the dangers of smoking and those concerned with "the trade and commerce aspects of the tobacco industry." Palmer v. Liggett Group, Inc., supra at 622. See Cipollone v. Liggett Group, Inc., supra at 187. Congress determined that the balance between these two competing interests was best struck by allowing cigarettes to be sold only if labeled with an appropriate warning. In this manner, cigarettes could remain in the flow of national commerce, while the smoking public was afforded an opportunity to consider the health hazards of cigarettes before their purchase or consumption.
To achieve this balance, and to further its purpose of avoiding "diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health," Congress set out the exact words of the warning label each package of cigarettes or cigarette advertisement must bear. 15 U.S.C. § 1333. The language of the warning label was strengthened as Congress deemed appropriate, and Congress expressly forbade the requirement of any "statement relating to smoking and health, other than the statement required by section 1333" on any cigarette package. 15 U.S.C. § 1334(a). Congress also stated that "[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes [which bear the proper warning label]." 15 U.S.C. § 1334(b). In sum, Congress considered its warning to be adequate and, through the preemption provisions of the Act, declared that no other *178 warning need be given on any cigarette package or in cigarette advertising or promotion.
Congress did not intend impliedly to preempt all State law claims. "[T]raditional areas of state regulation are not preempted simply because the federal government regulates comprehensively in the area, even when federal policy supports a certain industry." Pennington v. Vistron Corp., supra at 422. Implied preemption of all State law claims regarding the relationship between cigarettes and health does not exist unless the regulatory scheme created by the Act is "so pervasive ... [or] so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." Rice v. Sante Fe Elevator Corp., 331 U.S. 218, 230 (1947). See Apkin v. Treasurer & Receiver Gen., 401 Mass. 427, 433 (1988). The Third, Fifth, and Eleventh Circuit Courts of Appeals have found that no such dominance or pervasiveness is demonstrated by the Act. See Cipollone v. Liggett Group, Inc., supra at 186; Pennington v. Vistron Corp., supra at 422-423. Stephen v. American Brands, Inc., supra at 313. "[T]he object of the Act and the character of obligations imposed by it [fail to] reveal a purpose to exert exclusive control over every aspect of the relationship between cigarettes and health." Cipollone v. Liggett Group, Inc., supra at 186. Therefore, analysis of the preemptive effect of the Act must turn to an examination of the extent to which State law claims "actually conflict" with the Cigarette Labeling Act in order to determine which State law claims are impliedly preempted. Silkwood v. Kerr-McGee Corp., supra at 248.
If a State common law claim, based on a failure of a duty to warn, were to succeed against a cigarette manufacturer who had fulfilled the requirements of the Cigarette Labeling Act, liability would have to be based on a finding that the Federal warning label was inadequate. Such a finding would directly contradict Congress's declaration that its warning is sufficient. Furthermore, Congress's express purpose of avoiding diverse cigarette warning labels would be hindered. Such a result is not permitted under Federal preemption principles. *177 See Pennington v. Vistron Corp., supra at 421; Roysdon v. R.J. Reynolds Tobacco Co., supra at 234-235; Palmer v. Liggett Group, Inc., supra at 626; Stephen v. American Brands, Inc., supra at 313; Cipollone v. Liggett Group, Inc., supra at 187; Forster v. R.J. Reynolds Tobacco Co., supra at 660.
Philip Morris argues that, aside from any duty to warn, the Cigarette Labeling Act also impliedly preempts those of the plaintiffs' claims which depend, to some degree, on allegations concerning Philip Morris's marketing activity. In support of its argument, Philip Morris points to the opinion in Cipollone v. Liggett Group, Inc., supra, which states that the Cigarette Labeling Act "preempts those state law damage actions relating to smoking and health that challenge either the adequacy of the warning on cigarette packages or the propriety of a party's action with respect to the advertising and promotion of cigarettes" (footnote omitted). Id. at 187. The plaintiffs allege as part of their claims that "Philip Morris Inc. at all times relevant to this lawsuit has taken affirmative action  including but not limited to special marketing techniques (e.g., the theme of `cowboys') targeted for marketing to youthful consumers  which it knows or in due diligence should know increase the attractiveness of Marlboros, Marlboro Lights and Parliaments to minors in the Commonwealth of Massachusetts."
Philip Morris argues that any State common law claim which would require proof of this allegation as a prerequisite to a finding of liability is preempted. According to Philip Morris's argument, Congress intended impliedly to preempt an extensive array of potential State law claims. The phrase chosen by the Third Circuit, and emphasized by Philip Morris, "the propriety of a party's action with respect to the advertising and promotion of cigarettes," encompasses a field of activity of enormous potential diversity. Because public health and safety has traditionally been a concern of the States, sweeping Federal preemption of State law claims which seek to regulate public health and safety in such a broad area should not be implied unless Congress made its *178 intention to do so clear. Hillsborough County v. Automated Medical Laboratories, 471 U.S. 707, 715-716 (1985). I am unable to discern such a wide-ranging intention.
"[T]he bedrock on which implied preemption rests is the avoidance of a conflict between a state claim and the federal warning label." Forster v. R.J. Reynolds Tobacco Co., supra at 660. The language of the Third Circuit, referring to "the propriety of a party's actions with respect to the advertising and promotion of cigarettes," can be read only to describe that activity which, in the context of a State law claim, would represent a challenge to the adequacy of the Federal warning. Any broader preemptive effect of the phrase in question cannot be confidently drawn from the language or the purposes of the Cigarette Labeling Act. See id. at 660. Contra Cipollone v. Liggett Group, Inc., 893 F.2d 541 (3d Cir.1990) (Cipollone II).[2]
*179 In Forster v. R.J. Reynolds Tobacco Co., supra, the Supreme Court of Minnesota declared that a claim of intentional misrepresentation brought against a cigarette manufacturer was not preempted by the Cigarette Labeling Act, despite the fact that the claim depended upon allegations which included the manufacturer's advertising activities. Id. at 662. The court based its decision on a finding that the cause of action "[did] not lie in challenging the adequacy of the federal warning [or] in claiming a dilution of that warning." Id. With reference to the plaintiff's claim of intentional misrepresentation, the Minnesota Supreme Court stated that, "[t]o find in this situation an implied preemption, we would have to assume that Congress intended the Act to be a license to lie, an assumption both uncharitable to Congress and violative of this state's deep concern for honesty as well as health." Id. at 662. In so far as the plaintiff's claim did not implicate a claim of a breach of a duty to warn, it was allowed to proceed. Id.
I, too, am unwilling to ascribe to Congress the intent to provide cigarette producers "a license to lie." Such a result is not compelled by the Cigarette Labeling Act's preemption of claims based on a duty to warn, and is incompatible with the long-standing rule that a court must guide its preemption analysis according to the "overriding presumption that `Congress did not intend to displace state law.'" Cipollone v. Liggett Group, Inc., 789 F.2d at 185, quoting Maryland v. Louisiana, supra at 746. The Minnesota case, with its scenario of "a license to lie," provides a clear example of but one of the extreme positions this State would have to accept were it to *180 insulate all cigarette advertising activity from scrutiny under State law.
2. State law claims. The judge denied Philip Morris's motion for summary judgment as to each of the plaintiffs' four claims. It seems clear on this record that the focus of the judge's decision was the issue of the survival of the plaintiffs' claims under Federal preemption analysis, and not, as the court suggests, as a ruling on matters of State law. I come to this conclusion primarily because the judge's order anticipated "considerable discovery" should his denial of the motion for summary judgment be upheld on appeal. Had the judge's decision focused on the State law claims, it seems logical to me that he would have considered discovery to have been substantially completed on these issues. His discussion of "considerable" future discovery suggests that such was not the case. See Kauffman v. Puerto Rico Tel. Co., 841 F.2d 1169, 1172 (1st Cir.1988) (summary judgment generally should not enter unless there has been adequate time for discovery).
a. Civil conspiracy. The plaintiffs allege that Philip Morris entered into a conspiracy with Store 24 and "diverse unknown distributors of Parliaments and Marlboros" to sell cigarettes to minors in the Commonwealth. The plaintiffs claim that, pursuant to an express or implied agreement to combine with Store 24 and unknown distributors to increase sales of Parliament and Marlboro to minors, Philip Morris engaged in concerted action intended to further the designs of the conspiracy. Such action was described in the complaint as "including but not limited to marketing practices [designed to increase the attractiveness of Parliament and Marlboro to minors and] the continuing distribution of Parliament and Marlboro to defendant The Store 24, Inc. over time while possessing actual knowledge that said retail defendant was engaging in a pattern and practice of selling said Parliament and Marlboro to minors in violation of M.G.L. ch. 270 § 6."
In order to establish liability under a concert of action theory, the plaintiffs must establish that there was an express or *181 implied agreement between Philip Morris and Store 24 to sell cigarettes illegally to minors. Gurney v. Tenney, 197 Mass. 457, 466 (1908). Payton v. Abbott Labs, 512 F. Supp. 1031, 1035 (D. Mass. 1981). The plaintiffs argue that an agreement may be inferred from the conduct of Philip Morris and Store 24, in which Store 24 sold cigarettes to minors and Philip Morris, with knowledge of the illegal sales, continued to supply Store 24 with cigarettes and undertook a marketing campaign designed to encourage minors to buy cigarettes.
This court has recognized that an agreement may be inferred due to the concerted action of the parties. See Commonwealth v. Taber, 350 Mass. 186 (1966); Orszulak v. Bujnevicie, 355 Mass. 157 (1969); Nelson v. Nason, 343 Mass. 220 (1961); Attorney Gen. v. Tufts, 239 Mass. 458, 494 (1921). In one of the cases cited by the plaintiffs, Direct Sales Co. v. United States, 319 U.S. 703 (1943), cited with approval by this court in Commonwealth v. Taber, supra at 187, the United States Supreme Court sustained a conspiracy conviction, holding that an agreement to sell drugs illegally could be inferred between a mail-order pharmaceutical business and a physician who falsified prescriptions in order illegally to sell morphine purchased from the mail-order business. In Direct Sales, supra, the Court relied upon the fact that (1) morphine is a restricted commodity, (2) the mail-order business encouraged high quantity sales, and (3) the mail-order business, despite being warned by the Bureau of Narcotics that it was being used as a source of supply by convicted physicians, continued to sell to the physician in question, on a daily basis, an amount of morphine equivalent to that prescribed by the average physician over the course of one year. Id. at 706-712.
For the purposes of the motion for summary judgment, the judge was entitled to conclude that Philip Morris's marketing and advertising activity, in conjunction with Store 24's illegal sale of cigarettes to minors, demonstrated a sufficient connection between Philip Morris and Store 24 to raise a genuine dispute as to the existence of an inferred agreement between *182 them. The plaintiffs' complaint claims that various "unknown distributors of Parliaments and Marlboros" are involved in a conspiracy with Philip Morris and Store 24. Regarding this point, the judge found that Philip Morris has conceded that a genuine factual dispute exists as to several facts, including whether "[a] pattern and practice of illegal retail sales of Marlboros to minors ... exists in the Commonwealth." Additionally, as the judge's report stated, discovery had not yet been completed on this and other issues.
If the plaintiffs could show that the "pattern and practice" they alleged includes some concerted action between Philip Morris, the independent distributors, and Store 24, this could support an inference of an agreement between Philip Morris and Store 24. "It is not essential to a conspiracy that the parties meet or that they confer and formulate their plans. Common purpose may be inferred from concerted action converging to a definite end." Attorney Gen. v. Tufts, supra at 494. See Commonwealth v. Taber, supra at 186, 187. The existence of an agreement is a fact which is material to the resolution of a conspiracy claim. See Gurney v. Tenney, supra at 466.
In my view, the court should not rule that, based on the record before him, the judge erred in concluding that the plaintiffs should be allowed an opportunity to produce additional evidence to suggest a more concrete connection between the actions of Philip Morris and the alleged illegal activity of Store 24. Philip Morris was not entitled to summary judgment on the conspiracy count of the complaint.[3]
b. Negligent entrustment. In their complaint, the plaintiffs allege that Philip Morris, by knowingly encouraging sales of Parliament and Marlboro to minors and by failing to take affirmative action to prevent Store 24 from selling these cigarettes to minors, created an unreasonable risk of injury and negligently breached its common law duty not to entrust a *183 dangerous instrumentality to a minor. The plaintiffs' claim of negligent entrustment is based on "the general rule that a person may be found negligent for furnishing a dangerous instrumentality to a child who uses it to cause harm, since `the serious consequences which [follow] ought to have been foreseen and guarded against.'" Michnik-Zilberman v. Gordon's Liquor, Inc., 390 Mass. 6, 10 n. 4 (1983), quoting Pudlo v. Dubiel, 273 Mass. 172, 175 (1930).[4]
In order to establish liability for negligent entrustment of a dangerous instrumentality, the plaintiffs must prove, among other things, "that the defendant owned or controlled the [instrumentality] concerned." Alioto v. Marnell, 402 Mass. 36, 40 (1988), quoting Leone v. Doran, 363 Mass. 1, 7 (1973). If the plaintiffs were allowed to establish that Philip Morris entered into a conspiracy with Store 24 to sell cigarettes to minors, a jury reasonably could conclude that Philip Morris was able to exert some measure of control over the cigarettes. Whether this control rose to the level required to prove that Philip Morris "entrusted" cigarettes to minors would have been an issue for the jury. Because the judge found that further discovery may be necessary to flesh out the factual basis for the plaintiffs' allegations concerning Philip Morris's involvement in the alleged "pattern and practice" of illegal sales of cigarettes to minors, the court should not rule that the judge erred in denying the defendant summary judgment as to the plaintiffs' negligent entrustment claim.
Regarding the issue of actual knowledge of the plaintiffs' incompetence, it is evident from the provisions of G.L.c. 270, § 6, that the Legislature has determined that all minors, without the aid of a parent or guardian, are incompetent *184 to make the decision whether or not to smoke cigarettes. Therefore, sellers or suppliers of cigarettes are prohibited from providing cigarettes to minors in the Commonwealth.[5] This legislative determination, incorporated into the plaintiffs' complaint by their reference to G.L.c. 270, § 6, provided a sufficient basis for the judge to conclude that the plaintiffs, who were minors at the time they purchased Philip Morris cigarettes, had raised a genuine dispute whether Philip Morris, "by inference or otherwise ... had actual knowledge of the [plaintiffs'] incompetence." Leone v. Doran, supra at 13 n. 3.
Because the plaintiffs have raised genuine issues of material fact concerning their allegation of negligent entrustment and as to their civil conspiracy claim, summary judgment was appropriately denied as to these counts of the complaint. Accordingly, I dissent from that part of the court's opinion which grants Philip Morris summary judgment.
NOTES
[1] Sean Cann.
[2] The action was also brought against The Store 24, Incorporated (Store 24), from whom it is alleged the plaintiffs, while minors, purchased cigarettes manufactured by Philip Morris. Store 24 was not involved in the ruling whose propriety the Superior Court judge has reported to us.
[3] General Laws c. 270, § 6 (1988 ed.), states: "Whoever sells a cigarette, chewing tobacco, snuff or any tobacco in any of its forms to any person under the age of eighteen or, not being his parent or guardian, gives a cigarette, chewing tobacco, snuff or tobacco in any of its forms to any person under the age of eighteen shall be punished by a fine of not less than one hundred dollars for the first offense, not less than two hundred dollars for a second offense and not less than three hundred dollars for any third or subsequent offense."
[4] We need not consider whether the first two claims might be preempted under the Federal Cigarette Labeling and Advertising Act (15 U.S.C. §§ 1331-1341 [1988]), as Philip Morris asserts. We shall briefly discuss the possible preemptive effect of that act on the implied warranty and G.L.c. 93A claims, following our discussion of those claims.
[5] "§ 876. Persons Acting in Concert

"For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
"(a) does a tortious act in concert with the other or pursuant to a common design with him, or
"(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself."
[6] The record shows nothing of the involvement of any wholesaler in the conspiracy. The absence of such a demonstration in the face of the uncontroverted material facts in the record presents a separate problem for the plaintiffs.
[7] To accept the plaintiffs' civil conspiracy theory on the record in this case would unwarrantably expand the potential liability of many manufacturers whose products are sold unlawfully. For example, a manufacturer that is aware only that its products are sometimes sold illegally (i.e., firearms, liquor, pharmaceuticals) could be held liable for acting in concert with or for aiding and abetting any specific retailer found to have made illegal sales. Such wholesale liability should not be adopted as a common law principle.
[8] In the Killeen case, the Appeals Court held that a manufacturer of cinnamon flavored toothpicks was not liable for negligently marketing its product to children. The court noted in dicta that a manufacturer's liability might be based on the marketing of a product in a manner calculated to induce direct purchases by children whose use would involve an unreasonable risk of injury. Id.
[9] We observe that the plaintiff Kyte testified at her deposition that she started smoking to be like her friends. The plaintiff Cann testified at his deposition that he started smoking because it was "cool" and his friends were doing it.
[1] "The Supremacy Clause of Art. VI of the Constitution provides Congress with the power to pre-empt state law. Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, Jones v. Rath Packing Co., 430 U.S. 519 (1977), when there is outright or actual conflict between federal and state law, e.g., Free v. Bland, 369 U.S. 663 (1962), where compliance with both federal and state law is in effect physically impossible, Florida Lime & Avocado Growers, Inc. v. Paul, 378 U.S. 132 (1963), where there is implicit in federal law a barrier to state regulation, Shaw v. Delta Air Lines, Inc., 463 U.S. 85 (1983), where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, Rice v. Santa Fe Elevator Corp., 331 U.S. 218 (1947), or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. Hines v. Davidowitz, 312 U.S. 52 (1941)." Louisiana Pub. Serv. Comm'n v. FCC, 476 U.S. 355, 368-369 (1986).
[2] None of the other Federal Circuit Court opinions analyzing the preemptive effect of the Cigarette Labeling Act is directly contrary to my conclusion on this point. In Palmer v. Liggett Group, Inc., supra, the First Circuit characterized the plaintiffs' claims as "complain[ing] that [the cigarette manufacturer] negligently gave inadequate warnings about the dangers of cigarette smoking." Id. at 622. Similarly, in Roysdon v. R.J. Reynolds Tobacco Co., the Sixth Circuit's preemption analysis was limited to the plaintiff's failure to warn claim. Id. at 232. In Pennington v. Vistron Corp., supra, the Fifth Circuit Court of Appeals held that the plaintiff's failure to warn claim was preempted by the Cigarette Labeling Act while allowing the plaintiff's claim that cigarettes are unreasonably dangerous per se to continue. None of these holdings dealt squarely with the issue of the preemption of State law claims which refers to advertising activity other than a duty to warn claim.

The Eleventh Circuit, in Stephen v. American Brands, Inc., supra, adopted wholesale the decision and reasoning of the Third Circuit in Cipollone I. Id. at 313. In Cipollone I, the plaintiff raised claims of unsafe and defective design, conspiracy and negligent and intentional misrepresentation in addition to a failure to warn claim. However, the court in that case did not apply its preemption analysis to the plaintiff's specific claims, choosing instead to remand this task to the District Court. Therefore, the decision in Cipollone I, and consequently the decision in Stephen v. American Brands, Inc., does not indicate whether the Third Circuit's preemption analysis would apply to claims other than duty to warn claims.
In Cipollone II, the Third Circuit made its position on this point clear, holding that its preemption analysis in Cipollone I applied to State claims other than duty to warn claims that involved allegations of advertising activity. Id. at 582. However, the Eleventh Circuit has yet to indicate its acceptance or rejection of the decision in Cipollone II.
I note as an interesting sidelight that in Cipollone II the Third Circuit held that the plaintiff's risk-utility claim was not preempted. Id. at 582 n. 52. The cigarette manufacturer in that case had argued that the risk-utility claim called into question cigarette advertising and promotional activity. Id. The court, however, disagreed, stating that the risk-utility claim "involves the basic decision to market the product." Id.
[3] The civil conspiracy claim does not implicate either the adequacy of the warning label required by the Cigarette Labeling Act or Philip Morris's duty to warn of the health hazards of its product. Accordingly, no part of the plaintiffs' civil conspiracy claim is preempted.
[4] An action for negligent entrustment involves a person's duty to keep a dangerous instrumentality out of a child's reach, and would lie regardless of the adequacy of any warnings provided to the child regarding the dangers presented by the use of the instrumentality. Because Philip Morris's duty to warn of the hazards of its product is not implicated by the negligent entrustment claim, no portion of the claim is preempted by the Cigarette Labeling Act.
[5] A violation of this statute will serve as evidence of the negligence of the seller or supplier in entrusting a dangerous instrumentality to a minor. See Michnik-Zilberman v. Gordon's Liquor, Inc., supra at 10 (violation of a statute prohibiting provision of alcoholic beverages to minors can serve to establish negligence).