**Paul M. JOHNSON, As Executor of the Estate of Maureen P. Johnson, Plaintiff,**

v.

**BROWN & WILLIAMSON TOBACCO CORPORATION, Defendant.**

**No. Civ.A. 99–40161–NMG.**

United States District Court, D. Massachusetts.

Nov. 8, 2000.

Burton A. Nadler, Emily S. Bromley, Petrucelly & Nadler, Boston, MA, for Paul M. Johnson, Executor of the Estate of Maureen P. Johnson, plaintiff.

John H. Henn, David R. Geiger, Evan Georgopoulos, Foley, Hoag & Eliot, Boston, MA, for Brown & Williamson Tobacco Corporation, defendant.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Plaintiff, Paul M. Johnson ("Johnson"), as executor of the estate of his wife, Maureen P. Johnson, has brought this tobacco products liability action against defendant, Brown & Williamson Tobacco Corp. ("B & W"), under several state common law theories, claiming that his wife contracted lung cancer and died as a result of smoking cigarettes manufactured by B & W. Pending before this Court is B & W's motion to

dismiss the complaint (Docket No. 5) on grounds that 1) all of Johnson's claims are preempted by the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1331 *et seq.*, and 2) the complaint fails to state any claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6).

## I. *Background*

The decedent, Mrs. Johnson, began smoking Kool brand cigarettes, which are manufactured by B & W, in 1965 at the age of sixteen. For the rest of her life, she smoked between one and two packs of cigarettes per day. In or around August of 1996, the decedent was diagnosed with small cell lung cancer, and was informed by her doctors that her pulmonary illnesses were the direct result of smoking cigarettes. Mrs. Johnson died on April 5, 1997.

Johnson filed the instant action on September 20, 1999 in Massachusetts Superior Court and B & W removed to this Court based upon diversity jurisdiction. The complaint is formally divided into five counts: 1) negligence, 2) breach of warranty, 3) civil conspiracy, 4) fraud, and 5) wrongful death. However, there is some overlap among the counts and each count incorporates by reference all preceding portions of the complaint.

Count I charges B & W with negligence in 1) breaching its duty to warn decedent of the health risks of smoking ("negligence claim based on failure to warn"), and 2) failing to adequately test and design its products ("negligence claim based on defective design").

Count II claims that B & W breached an express warranty and implied warranties of merchantability and fitness for a particular purpose, M.G.L. c. 106, §§ 2–313, 2–314, and 2–315, respectively, by selling tobacco products that were defective and unreasonably dangerous to foreseeable users when used as intended. Specifically, Johnson claims that 1) B & W's cigarette products failed to contain sufficient instructions on how to consume cigarettes more safely ("breach of warranty claim based on failure to warn"), and 2) B & W failed to incorporate several design alternatives that would allegedly have made their cigarettes safer ("breach of warranty claim based on defective design claim").

Count III alleges that B & W, along with other leading cigarette manufacturers, was involved in a civil conspiracy to conceal the harmful effects of cigarette smoking from the public through a variety of deceitful tactics.

Count IV claims that B & W's actions fraudulently induced Mrs. Johnson to begin smoking cigarettes resulting in extreme pain and ultimately her death from lung cancer as well as severe emotional distress to the plaintiff and his family.

Finally, Count V charges B & W with wrongful death based upon the claims made in Counts I through IV.

B & W responds by moving to dismiss under Fed.R.Civ.P. 12(b)(6). It argues that 1) all of Johnson's claims are preempted by the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1331 *et seq.*, 2) the complaint fails to plead elements of legal theories or basic factual allegations necessary to each of the five Counts, and 3) the complaint fails to plead fraud with the specificity required by Fed.R.Civ.P. 9(b).

## II. *Motion to Dismiss*

### A. Standard

A motion to dismiss for failure to state a claim may be granted only if it appears, beyond doubt, that the plaintiffs can prove no facts in support of their claim that entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court must accept all factual averments in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B.,* 958 F.2d 15, 17 (1st Cir.1992). The Court is also required to look only to the allegations of the

complaint and, if under any theory they are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. *Knight v. Mills,* 836 F.2d 659, 664 (1st Cir.1987).

### B. Preemption under the Federal Cigarette Labeling and Advertising Act

A complaint alleging claims for injuries allegedly resulting from smoking cigarettes must be evaluated in light of the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1331 *et seq.* The United States Supreme Court traced the history of the Act in *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). In 1964, an advisory committee convened by the Surgeon General issued a report warning of health hazards associated with cigarette smoking. In partial reliance on that report, the Federal Trade Commission ("the FTC") promulgated a rule, to take effect January 1, 1965, that would have made it a violation of the Federal Trade Commission Act to fail to disclose in all advertising and on all cigarette packaging that cigarette smoking is dangerous to health and may cause death from cancer and other diseases. *Id.* at 513, 112 S.Ct. 2608.

At the same time, several states enacted laws regulating the advertising and labeling of cigarettes. Fearing conflicting state and federal regulation, Congress directed the FTC to postpone enforcement of its new regulation for six months and, in July of 1965, passed the Federal Cigarette Labeling and Advertising Act ("the 1965 Act"). *Id.* at 513–14, 112 S.Ct. 2608. The Act sought to ensure, *inter alia,* that

> commerce and the national economy may be ... not impeded by diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health.

15 U.S.C. § 1331(2)(B).

Section 4 of the Act mandated the following warning on cigarette packages sold in the United States: "CAUTION: CIGARETTE SMOKING MAY BE HAZARDOUS TO YOUR HEALTH." *Cipollone,* 505 U.S. at 514, 112 S.Ct. 2608. Section 5 of the Act addressed the congressional concern with non-uniform state cigarette advertising and labeling laws by giving the Act preemptive effect:

> (a) No statement relating to smoking and health, other than the statement required by section 4 of this Act, shall be required on any cigarette package.

> (b) No statement relating to smoking and health shall be required in the advertising of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.

15 U.S.C. § 1334(b) (1966), *amended by* 15 U.S.C. § 1334(b) (1969).

In 1969, Congress enacted the Public Health Cigarette Smoking Act of 1969 ("the 1969 Act") which amended the 1965 Act in several ways, but most importantly for the instant case by expanding the preemptive effect of § 5:

> (b) No requirement or prohibition based on smoking and health shall be imposed under State law with respect to advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.

*Cipollone,* 505 U.S. at 515, 112 S.Ct. 2608.

In *Cipollone,* the Supreme Court compared the broader 1969 Act § 5 to its 1965 Act counterpart. In Part IV of the opinion, the majority stated that § 5 of the 1965 Act "only pre-empted state and federal rulemaking bodies from mandating particular cautionary statements [on cigarette labels and in cigarette advertisements] and did not pre-empt state-law damages actions." *Id.* at 519–20, 112 S.Ct. 2608. In Part V of the opinion, a plurality of the Court noted that § 5 of the 1969 Act, preempts claims to the extent that they rely "not simply [on] 'statement[s]' but rather 'requirement[s] or prohibition[s] ... imposed under State law.'" *Id.* at 520, 112 S.Ct. 2608. Further, it was deter-

mined that the 1969 Act "reaches beyond statements 'in the advertising' [of cigarettes] to obligations 'with respect to the advertising or promotion' of cigarettes." *Id.* Accordingly, the Court found that the 1969 Act would indeed preempt post–1969 state common-law claims if

> the legal duty that is the predicate of the common-law damages action constitutes a "requirement or prohibition based on smoking and health ... imposed under State law with respect to ... advertising or promotion," giving that clause a fair but narrow reading.

*Id.* at 524, 112 S.Ct. 2608. Applying this test, the Court found several exceptions to the 1969 Act's preemptive effect:

> 1) failure to warn claims based on pre-July 1969 advertising or promotion,
>
> 2) claims based upon the defendants' "testing or research practices unrelated to advertising or promotions",
>
> 3) claims based on "a state-law obligation to avoid marketing cigarettes with manufacturing defects or to use a demonstrably safer alternative design for cigarettes",
>
> 4) claims for breach of express warranty,
>
> 5) claims based on a state-law duty to disclose facts "through channels of communication other than advertising or promotion",
>
> 6) fraudulent misrepresentation claims based on false statements of material fact, and
>
> 7) claims of conspiracy to misrepresent material facts or engage in other predicate acts that are not themselves preempted.

*Id.* at 524–30, 112 S.Ct. 2608; *see also Penniston v. Brown & Williamson Tobacco Corp.,* 2000 WL 1585609, No. 99–10628, slip op. at 7–8 (D.Mass. June 15, 2000) (identifying the exceptions set forth in *Cipollone* ).

Because Johnson alleges that his wife started smoking in 1965, before the effective date of the more expansive 1969 version of § 5(b), his claims must be divided into pre–1969 claims (1965–1969) and post–1969 claims (1969–1997).

### 1. *Pre–1969 Claims*

*Cipollone* held that § 5 of the 1965 Act did not preempt state common-law damages actions. *Cipollone,* 505 U.S. at 519–20, 112 S.Ct. 2608. Accordingly, the portion of Johnson's five claims attributable to smoking by the decedent between 1965 and 1969 is not preempted by the Act.

### 2. *Post–1969 Claims*

The First Circuit Court of Appeals recently formulated a "modified version" of the *Cipollone* preemption test for common law claims. Under this modified test, Johnson's post–1969 claims will be preempted by the 1969 Act if the "predicate legal duty" underlying each claim

> constitutes (1) a "requirement or prohibition ... imposed under State law," (2) "based on smoking and health," (3) "with respect to the advertising or promotion of any [properly labeled] cigarettes."

*Philip Morris Inc. v. Harshbarger,* 122 F.3d 58, 70 (1st Cir.1997); *see also Lorillard Tobacco Co. v. Reilly,* 76 F.Supp.2d 124, 129 (D.Mass.1999) (applying First Circuit test). Thus, the 1969 Act preempts state tobacco advertising regulations that

> require an advertiser to make a statement concerning the relationship between smoking and health ... and those that prevent an advertiser from carrying required or permitted health-based statements....

*Lorillard Tobacco Co.,* 76 F.Supp.2d at 133. The Court considers each claim *seriatim.*

#### a. Negligence

Johnson's negligence claim is subdivided into two parts: 1) breach of a duty to warn the decedent of the health risks of smoking (i.e. failure to warn), and 2) defective design.

### (1) Failure to Warn

Johnson alleges that B & W failed to "warn adequately of developing knowledge demonstrating that cigarette smokers are at great risk of harm...." Complaint ¶ 28. To the same effect, he alleges that B & W "negligently breached its duty ... to disclose" information regarding the health risks of smoking. Complaint ¶ 31.

■ Under Massachusetts law, a manufacturer has a duty to exercise reasonable care to prevent injury to foreseeable users of a product that it knows or should know is dangerous. *H.P. Hood & Sons, Inc. v. Ford Motor Co.*, 370 Mass. 69, 75, 345 N.E.2d 683 (1976). The exercise of reasonable care includes a duty to warn if the manufacturer has reason to suspect that a warning is necessary. *Id.* To the extent that Johnson's failure to warn claim alleges that B & W should have included certain warnings in its advertising and promotions, it is based on an alleged state-law duty to warn about the health effects of smoking with respect to advertising or promotions. Accordingly, the failure to warn claim is clearly preempted by the 1969 Act. *Cipollone*, 505 U.S. at 524, 112 S.Ct. 2608 (holding that failure to warn claims are preempted if they require a showing that "post–1969 advertising or promotions should have included additional, or more clearly stated warnings").

In an effort to circumnavigate *Cipollone*, Johnson also alleges that B & W breached a duty to warn the decedent and the public about the health risks of smoking "through non-advertising and non-promotional communications". Complaint ¶ 33. In *Cipollone*, the Court excepted claims based on a state-law duty to disclose material facts "through channels of communication other than advertising or promotion" from the 1969 Act's preemptive effect. *Cipollone*, 505 U.S. at 528, 112 S.Ct. 2608. As an example, the Court cited a state-law duty to disclose material facts about smoking and health to an administrative agency. *Id.*

■ Nothing in *Cipollone* indicates, however, that this distinction applies when a cigarette manufacturer communicates with the public as opposed to a state agency. As B & W points out, lower courts have consistently held that any communication by a cigarette manufacturer with the public constitutes "advertising or promotion" under the 1969 Act. *See, e.g., Lacey v. Lorillard Tobacco Co.*, 956 F.Supp. 956, 962–64 (N.D.Ala.1997) (cigarette manufacturers can ordinarily communicate directly with consumers through advertising and promotions only); *Griesenbeck v. American Tobacco Co.*, 897 F.Supp. 815, 823 (D.N.J.1995) (a company's attempt to notify its mass market of anything constitutes "advertising or promotion"). Presumably, Johnson is suggesting that B & W could have employed non-promotional communications such as seminars or public service messages to warn the public about the hazards of cigarette smoking. Any such attempt would have qualified as "advertising or promotion" under the 1969 Act, and thus Johnson's negligence claim based on failure to warn is preempted.

### (2) Defective Design

Johnson bases his defective design claim on alleged failures by B & W to test and conduct research on its cigarette products for addictive qualities, Complaint ¶ 29, and to make reasonable improvements in the design and manufacture of its cigarettes to reduce health risks. Complaint ¶¶ 30, 32, 40.

■ Massachusetts imposes a duty on manufacturers to design their products with reasonable care "to eliminate avoidable dangers". *Uloth v. City Tank Corp.*, 376 Mass. 874, 878, 384 N.E.2d 1188 (1978). This state-law duty is not specifically directed at smoking or health with respect to the advertising or promotion of cigarettes. In *Cipollone*, the Court clearly held that § 5(b) of the 1969 Act generally does not preempt "state-law obligations to avoid marketing cigarettes with manufacturing defects or to use a demonstrably

safer alternative design for cigarettes." *Cipollone*, 505 U.S. at 523, 112 S.Ct. 2608. Accordingly, Johnson's negligence claim based on defective design is not preempted.

### b. Breach of Warranty

Johnson alleges breach of express warranty as well as breach of the implied warranties of merchantability and fitness for a particular purpose. Complaint ¶ 38.

#### (1) Express Warranty

■ Claims for breach of express warranty arise under Massachusetts statutory law. M.G.L. c. 106, § 2–313. Nevertheless, in *Cipollone*, the Supreme Court held that the 1969 Act does not preempt breach of express warranty claims because "[a] manufacturer's liability for breach of an express warranty derives from … the terms of that warranty." *Cipollone*, 505 U.S. at 525, 112 S.Ct. 2608. Thus, because a manufacturer voluntarily undertakes any commitments contained in an express warranty, such commitments are not imposed by state law. *Id.* Accordingly, Johnson's claim for breach of express warranty is not preempted.

#### (2) Implied Warranty of Merchantability

Under M.G.L. c. 106, § 2–314(2)(c), a seller impliedly warrants that a product is "fit for the ordinary purposes for which such goods are used." Breach of the implied warranty of merchantability can occur if either adequate warnings about the product were not given to foreseeable users or the product was defectively designed. *Hayes v. Ariens Co.*, 391 Mass. 407, 413, 462 N.E.2d 273 (1984), *abrogated on other grounds*, 428 Mass. 1, 696 N.E.2d 909 (1998). Johnson's claim for breach of the implied warranty of merchantability should therefore be broken into two parts: 1) an alleged breach of a duty to warn the decedent of the health risks of smoking (i.e. failure to warn), and 2) alleged defective design.

#### (a) Failure to Warn

Johnson contends that B & W's cigarette products "failed to contain sufficient instructions for their use or· safer use," Complaint ¶ 39, and then offers a list of possible warnings that B & W might have used, including directions 1) to smoke fewer cigarettes, 2) on how to smoke to reduce their carcinogenic effect, and 3) to avoid exceeding the addiction threshold. *Id.*

■ To the extent that Johnson's claim for breach of the implied warranty of merchantability is based on an alleged failure to warn about the health effects of cigarettes, it relies on a state-law requirement that B & W include statements regarding the relationship between smoking and health in its advertising. Consistent with his negligence claim based on failure to warn, Johnson's breach of warranty claim based on failure to warn is therefore preempted by the 1969 Act.

#### (b) Defective Design

Johnson claims that B & W breached its implied warranty of merchantability because its cigarettes were defectively designed in several respects including, among others, insufficient reduction in tar and other carcinogens by dilution and filtration, lack of distinctly marked vent holes and lack of stop markings. Complaint ¶ 40.

■ As noted *supra*, the 1969 Act does not preempt defective design claims with respect to cigarettes. *Cipollone*, 505 U.S. at 523, 112 S.Ct. 2608. For the same reason that Johnson's negligence claim based on defective design is not preempted neither will his breach of the implied warranty of merchantability claim based on defective design be preempted.

#### (3) Implied Warranty of Fitness for a Particular Purpose

■ Johnson also claims that B & W breached its implied warranty of fitness

for a particular purpose, M.G.L. c. 106, § 2–315, because it

> knew or should have known that the decedent relied on its skill, judgment and expertise in designing and manufacturing safe tobacco products, when she smoked their cigarettes believing them to be safe for the particular purpose for which they were intended.

Complaint ¶ 37. Implicit in that allegation is a claim of failure to warn the decedent that her belief in the safety of B & W cigarettes was misplaced. Presumably, B & W should have made the warning through its cigarette advertising and/or promotions. Because the 1969 Act preempts such failure to warn claims, *Cipollone*, 505 U.S. at 523, 112 S.Ct. 2608, Johnson's claim of breach of the implied warranty of fitness for a particular purpose based on failure to warn is preempted.

### c. Fraud

Because a predicate of Johnson's civil conspiracy claim is the establishment of a breach of the duty not to conspire to commit fraud, this Court considers his fraud claim first. Johnson alleges that B & W fraudulently induced Mrs. Johnson to begin smoking cigarettes, Complaint ¶ 68. In *Cipollone*, the Supreme Court distinguished between the predicate legal duties underlying two kinds of fraudulent misrepresentation theories for preemption purposes. The Court held that the 1969 Act preempted claims that cigarette manufacturers "through their advertising, neutralized the effect of federally mandated warning labels". *Cipollone*, 505 U.S. at 527–28, 112 S.Ct. 2608. The Court reasoned that such claims essentially constitute failure to warn claims because they rely on

> a state-law prohibition against statements in advertising and promotional materials that tend to minimize the health hazards associated with smoking. Such a *prohibition*, however, is merely the converse of a state-law *requirement*

that warnings be included in advertising and promotional materials.

*Id.* at 527, 112 S.Ct. 2608 (emphasis in original). Fraud claims attacking advertising that portrays cigarette smoking as glamorous, romantic and youthful would thus be preempted. *Id.* at 527–28, 112 S.Ct. 2608.

■ Conversely, the Court found that the 1969 Act does not preempt claims of intentional fraud and misrepresentation based on false representations and concealment of material fact, even if the allegedly fraudulent statements were made in advertisements or promotions, because "[s]uch claims are predicated not on a duty 'based on smoking and health' but rather on a more general obligation—the duty not to deceive." *Id.* at 528–29, 112 S.Ct. 2608; *see also Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 70–71 (1st Cir.1997) (recognizing this distinction).

■ The fraud count of Johnson's complaint (Count IV) does not clearly proceed under either fraud theory. It merely alleges fraudulent inducement and then incorporates all preceding allegations in the complaint by reference. Complaint ¶ 67. Nowhere, however, does the complaint allege fraudulent dilution of the federally-mandated cigarette warning labels by romantic or glamorous advertising. Instead, the complaint states that B & W and other manufacturers made communications in various public forums containing false statements of material fact or false representations. Complaint ¶¶ 53–57, 59. As noted *supra*, communications with the public by a cigarette manufacturer constitute "advertising or promotions" under the 1969 Act. Johnson's fraud claim can thus be characterized as an allegation that B & W made intentional misrepresentations and false statements of material fact in its advertising and promotional material. Construed as such, his fraud claim is not preempted.

### d. Civil Conspiracy

Johnson alleges that B & W and other tobacco companies conspired, *inter alia,* intentionally to suppress or conceal knowledge of the harmful effects of cigarette smoking, to frustrate the flow of information from the medical community to the public, and to create an illusion that B & W was conducting research on cigarette safety. Complaint ¶¶ 44–66.

 B & W argues that this claim is preempted because the torts on which it is predicated are themselves preempted. Nevertheless, just as with claims of fraudulent misrepresentation, a claim of conspiracy to misrepresent or conceal material facts concerning the health hazards of smoking is not preempted by the 1969 Act because it rests on "a [general] duty not to conspire to commit fraud" which is not based on smoking or health. *Cipollone,* 505 U.S. at 530, 112 S.Ct. 2608.

### C. Failure to State A Claim

Alternatively, B & W argues that, even if Johnson's complaint is not preempted, it should be dismissed for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In this part of the Memorandum, the Court considers only those claims that it has found are not preempted by § 5(b) of the 1969 Act.

#### 1. *Negligence*

##### a. Failure to Warn, Pre–1969

 Although under Massachusetts law a manufacturer has a duty to exercise reasonable care to prevent injury to foreseeable users of a product that it knows or should know is dangerous, *H.P. Hood & Sons, Inc. v. Ford Motor Co.,* 370 Mass. 69, 75, 345 N.E.2d 683 (1976), there is no duty to warn of dangers that are obvious to nearly all. *Colter v. Barber–Greene Co.,* 403 Mass. 50, 59, 525 N.E.2d 1305 (1988) (no duty to warn experienced forklift operator of obvious danger posed by lifting double bale that was not supported by backrest above level of mast uprights);

*Killeen v. Harmon Grain Products, Inc.,* 11 Mass.App.Ct. 20, 24, 413 N.E.2d 767 (1980) (dangers inherent in toothpicks obvious to nearly all).

In reviewing a motion to dismiss, this Court must accept all factual averments in the complaint as true, but it need not accept bald assertions or legal conclusions. *Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1216 (1st Cir.1996). Johnson claims that "[a]t all times relevant to this matter, the ordinary consumer ... did not, in the exercise of ordinary diligence, know of the likelihood or the severity of the risks from using tobacco products....", Complaint ¶ 14, but he offers no facts in support of that conclusory statement. The claim that nearly all Americans were unaware of the health risks associated with smoking prior to 1969 is simply without foundation.

 To the contrary, this Court is firmly convinced that the risks of smoking were quite clear to the population at large before 1969, *see, e.g., Guilbeault v. R.J. Reynolds Tobacco Co.,* 84 F.Supp.2d 263, 273 (D.R.I.2000) (taking judicial notice of "the community's common knowledge of the general disease-related health risks of smoking, including the risk of contracting cancer, as of 1964"); *Paugh v. R.J. Reynolds Tobacco Co.,* 834 F.Supp. 228, 231 (N.D.Ohio 1993) ("[T]he risks of smoking are an inherent characteristic of cigarettes, and ... knowledge of these risks has been common to the community since well before 1966."). This Court concludes that the widespread publicity surrounding the 1964 report by the Surgeon General's advisory committee concerning the health risks of smoking was sufficient to charge all reasonable consumers with general knowledge of such health risks at least as of 1964. *Guilbeault,* 84 F.Supp.2d at 273–74. Accordingly, B & W had no duty to warn the decedent prior to 1969 of the health risks related to smoking and Johnson has therefore failed to state a claim of negligent failure to warn.

### b. Defective Design

In Massachusetts, manufacturers have a "duty to design products so that they are reasonably fit for the purposes for which they are intended". *Smith v. Ariens Co.*, 375 Mass. 620, 624, 377 N.E.2d 954 (1978). The focus is "on whether the product is designed with reasonable care to eliminate avoidable dangers". *Uloth v. City Tank Corp.*, 376 Mass. 874, 878, 384 N.E.2d 1188 (1978). In the context of liability for defectively designed cigarettes, "[g]ood tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful." *Kotler v. American Tobacco Co.*, 685 F.Supp. 15, 19–20 (D.Mass.1988) (*citing* Restatement (Second) of Torts § 402A, cmt. i (1965)). To prevail on a claim that cigarettes were defectively designed a plaintiff must therefore "plead that the particular tobacco used in the cigarettes consumed was, itself, 'bad'; that is, it deviated from the norm for tobacco in some untoward way." *Herlihy v. R.J. Reynolds Tobacco Co.*, 1988 WL 73434, at *2 (D.Mass.).

Relying on *Herlihy*, B & W contends that the complaint is inadequate because it fails to make specific allegations that Kool brand cigarettes differ from the industry standard for cigarettes. On initial inspection, the rules set forth in *Kotler* and *Herlihy* appear to support B & W's contention. As Johnson points out, however, the standard for pleading deviation from the norm for tobacco in a defective design case is much less stringent than suggested by B & W.

For example, in *Kotler*, this district court found that the plaintiff had sufficiently pled that the tobacco in the defendant's cigarettes was "bad" by alleging "that the cigarettes were inadequately tested and designed, and that they contained toxic or carcinogenic ingredients." *Kotler*, 685 F.Supp. at 20. Similarly, in *Herlihy*, this district court held the following allegations sufficient to constitute a design defect claim:

"[t]he defendant was negligent in the design, manufacture, [and] testing . . . of Camel and Winston cigarettes, [which have] dangerous and defective characteristics . . . including their addictive properties and the facts that they cause lung cancer and serious diseases. . . ."

*Herlihy*, 1988 WL, at *2. The court reached this conclusion despite finding that "the thrust of the plaintiff's complaint is that cigarettes as a whole are unsafe . . ." *Id.; cf. Kyte v. Philip Morris Inc.*, 408 Mass. 162, 171, 556 N.E.2d 1025 (1990) (allegations that defendants' cigarettes "were inherently carcinogenic and addictive" sufficient to state claim for defective design based on breach of implied warranty).

Although the overall "thrust" of Johnson's negligent design claim may be characterized as alleging that cigarettes as a whole are dangerous, it clearly pleads that B & W's tobacco was "bad" according to *Kotler* and *Herlihy*. Like the plaintiff in *Herlihy*, Johnson alleges, *inter alia*, that B & W failed "to test, test adequately, or conduct scientific research on their cigarette products, for harmful or addictive properties. . . ." Complaint ¶ 29, and "to make feasible improvements in design, composition, and manufacture of their cigarette products. . . ." Complaint ¶ 30.

As in both *Kotler* and *Herlihy*, Johnson also alleges that B & W's cigarettes were highly carcinogenic and likely to cause a variety of diseases. Complaint ¶ 15 (incorporated into Count I by reference, Complaint ¶ 27). Furthermore, Johnson's claim that "[t]he particular Kool brand cigarettes smoked by the decedent were inherently carcinogenic and defective," Complaint ¶ 17, is very similar to the allegation deemed sufficient to state a claim of defective design based on breach of warranty in *Kyte*. Johnson has thus sufficiently pled design defects specific to B & W's cigarettes as opposed to cigarettes in general.

■ Additionally, a plaintiff alleging negligent design must show the existence of a safer alternative design that can be implemented without undue cost. *Colter v. Barber–Greene Co.*, 403 Mass. 50, 57, 525 N.E.2d 1305 (1988). Although Count I does not specify any such alternative designs, Count II (breach of warranty) lists several design defects in B & W's cigarettes by which Johnson implies that there was a safer alternative design available to B & W. That design presumably would have reduced tar and other carcinogens by dilution and filtration, distinctly marked vent holes and stop markings, reduced excessive nicotine delivery, etc. Complaint ¶ 40.

■ In Massachusetts, claims for defective design based on negligence and breach of warranty are closely related. *Kotler*, 685 F.Supp. at 19 ("[D]efendants cannot be found to have negligently designed their cigarettes without having breached the warranty of merchantability.") (*citing Hayes v. Ariens Co.*, 391 Mass. 407, 411–12, 462 N.E.2d 273 (1984), *abrogated on other grounds*, 428 Mass. 1, 696 N.E.2d 909 (1998)). This Court therefore reads Counts I and II of the complaint together for purposes of analyzing Johnson's two claims for defective design. It concludes that Count I of the complaint states a claim for negligent design upon which relief could be granted and thus that count will not be dismissed.

2. *Breach of Warranty*

a. Express Warranty

■ Under Massachusetts law, express warranties arise from affirmations of fact or promises made by sellers relating to their goods, as well as descriptions or samples of the goods. M.G.L. c. 106, § 2–313. Johnson claims that B & W extended an express warranty to the decedent through its "advertising, marketing and other efforts", Complaint ¶ 21, but offers no specific affirmation of fact or promise, nor any

particular description, sample or model that might give rise to such a warranty.

Johnson attempts to explain away this omission by arguing that there is no caselaw requiring the inclusion in pleadings of the precise words of an express warranty, but nowhere in the complaint does he make any assertions whatsoever that might give rise to an express warranty. His claim of breach of express warranty is therefore insufficiently pled. *Varney v. R.J. Reynolds Tobacco Co.*, 118 F.Supp.2d 63, 70 (D.Mass.2000) (dismissal of claim appropriate where plaintiff at no point pleads "the existence of anything remotely resembling an express warranty").

b. Implied Warranty of Merchantability

■ Under M.G.L. c. 106, § 2–314(2)(c), a seller impliedly warrants that a product is "fit for the ordinary purposes for which such goods are used." Breach of the implied warranty of merchantability can occur if either adequate warnings about the product were not given to foreseeable users or the product was defectively designed. *Hayes v. Ariens Co.*, 391 Mass. 407, 413, 462 N.E.2d 273 (1984).

(1) Failure to Warn, pre–1969

■ Goods are not fit for their ordinary purposes if, from the consumer's perspective, the absence of a warning makes the goods unreasonably dangerous. *Hayes*, 391 Mass. at 413, 462 N.E.2d 273. Liability for breach of the implied warranty of merchantability based on a failure to warn is premised on a duty to warn similar to that underlying a negligence claim based on a failure to warn. *Kotler v. American Tobacco Co.*, 926 F.2d 1217, 1230 (1st Cir.1990), *vacated on other grounds*, 505 U.S. 1215, 112 S.Ct. 3019, 120 L.Ed.2d 891 (1992), *judgment of affirmance reissued*, 981 F.2d 7 (1st Cir.1992). Accordingly, as in negligence cases, there is no duty to warn of generally known dangers in warranty cases. *Id.* Because Johnson offers no more than a bald asser-

tion that, prior to 1969, the risks of smoking were not obvious to consumers, he has failed to state a claim for breach of the implied warranty of merchantability based upon a failure to warn.

### (2) Defective Design

■ M.G.L. c. 106, § 2–314(2)(c) imposes a duty on manufacturers to design products so that they are reasonably fit for the purposes for which they are intended. *Marchant v. Dayton Tire & Rubber Co.,* 836 F.2d 695, 698 (1st Cir.1988). In the tobacco context, as with design defect cases premised on negligence, a plaintiff alleging breach of warranty based on design defect must first plead that the tobacco in the cigarettes consumed was itself defective, *Herlihy v. R.J. Reynolds Tobacco Co.,* 1988 WL 73434, *2 (D.Mass.1988), and then offer proof of a safer alternative design which could reasonably have been adopted. *Kotler,* 926 F.2d at 1225. As stated *supra* with respect to his negligence claim based on defective design, Johnson has met his burden, and thus his claim of breach of the implied warranty of merchantability based on defective design will not be dismissed.

### c. Implied Warranty of Fitness for a Particular Purpose, pre–1969

■ Under M.G.L. c. 106, § 2–315, the warranty of fitness for a particular purpose arises when 1) the seller had reason to know of the particular purpose for which the buyer required the goods, 2) the seller had reason to know of the buyer's reliance on the seller's skill or judgment in selecting or furnishing suitable goods, and 3) the buyer relied in fact. *Fernandes v. Union Bookbinding Co.,* 400 Mass. 27, 34, 507 N.E.2d 728 (1987).

Johnson claims that the decedent relied on B & W's "skill, judgment and expertise in designing and manufacturing safe tobacco products" and that B & W was aware of her reliance. Complaint ¶ 37. He fails, however, to allege any particular purpose the decedent might have had for the cigarettes she consumed. The complaint thus fails to state a claim for breach of the warranty of fitness for a particular purpose.

### 3. *Fraud*

■ To survive a motion to dismiss under Massachusetts law, a plaintiff claiming fraudulent misrepresentation must allege that the defendant 1) made a false representation of material fact, 2) with knowledge of its falsity, 3) for the purpose of inducing the plaintiff to act thereon, and 4) that the plaintiff relied upon the statement to his or her detriment. *Damon v. Sun Co.,* 87 F.3d 1467, 1471–72 (1st Cir. 1996). Moreover, Fed.R.Civ.P. 9(b) mandates that fraud claims be pled with particularity. The First Circuit has interpreted Rule 9(b) to require "specification of the time, place, and content of an alleged false representation...." *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 194 (1st Cir.1996) (*quoting McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d 226, 228 (1st Cir.1980)). Further, although a plaintiff's pleadings are afforded substantial deference in reviewing a motion to dismiss, "each general allegation must be supported by a specific factual basis" and a court need not credit unsubstantiated conclusions or subjective characterizations. *Fleming v. Lind–Waldock & Co.,* 922 F.2d 20, 23 (1st Cir.1990). Because Johnson's fraud claim fails to satisfy these requirements, it will be dismissed.

■ First, Johnson has failed to plead the elements of fraud under Massachusetts law. As B & W points out, nowhere in the complaint does Johnson claim that the decedent relied on particular false material statements by B & W. Johnson argues that the complaint adequately alleges reliance by stating that the decedent

> relied upon the manufacturer's superior knowledge regarding tobacco products and was impliedly or expressly instructed in their use by the advertising, marketing and other efforts of the defendant....

Complaint ¶ 21. Reliance on B & W's knowledge and/or its advertising, without any more detailed reference to a specific statement, does not, however, support a claim for fraud.

■ Second, Johnson's fraud claim fails to meet the requirements of Rule 9(b). The claim is stated in very broad terms, containing nothing more than conclusory statements accusing B & W of fraudulently inducing the decedent to begin smoking its cigarettes despite the fact that B & W knew cigarettes were unsafe. Complaint ¶ 68. Notwithstanding the fact that the statements set forth in Johnson's civil conspiracy claim (Count III) are incorporated into the fraud claim by reference, Complaint ¶ 67, Johnson has failed to state a claim for fraud. Nowhere in Count III does he set forth in more than general terms the time, place or content of any of B & W's allegedly fraudulent statements or deceptions. For example, Johnson states that

> [a] publication sent to over 200,000 physicians in the United States claim[ed] that cigarette smoking dangers were not real, when in fact the conspirators knew that such dangers were real.

Complaint ¶ 55. He never identifies the publication, when it was sent, the specific content of the statements or how B & W knew that those statements were false. Similarly, Johnson claims that B & W made

> [n]umerous statements from 1950 to 1962, criticizing scientific publications and reports that showed that lung cancer and other diseases were caused by cigarette smoking, based upon information the defendants knew to be false.

Complaint ¶ 57. Although Johnson provides a general time frame for those statements, again he fails to describe exactly when or how they were made or the statements themselves. *See Penniston v. Brown & Williamson Tobacco Corp.*, No. 99–10628, slip op. at 9 (D.Mass. June 15,

2000) (finding the language "[n]umerous statements from 1950 to 1962" insufficient to state a claim of fraud under Rule 9(b)).

### 4. *Conspiracy*

■ Johnson's civil conspiracy claim proceeds under a theory of "joint liability" civil conspiracy which is recognized in Massachusetts and requires 1) a common design or agreement between the defendants to commit a wrongful act, and 2) a tortious act done in furtherance of their plan. *Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1564 (1st Cir.1994); *Kyte v. Philip Morris Inc.*, 408 Mass. 162, 167, 556 N.E.2d 1025 (1990) (*citing* Restatement (Second) Torts § 876, cmt. b (1979)).

The tortious act underlying the alleged common design here appears to be fraudulent concealment of the health risks associated with smoking. Johnson claims that B & W participated in a civil conspiracy to

> conceal its knowledge of the harmful affects of cigarette smoking from the public, to frustrate the flow of information from the medical and scientific community to the general public on the health risks and addictive nature of cigarettes, and to create an illusion of conducting scientific research so as to mislead the public into believing cigarettes were safe.

Complaint ¶ 26; *see also id.* ¶¶ 45, 46 (alleging similar intention to commit fraud). In *Cipollone*, the Supreme Court found that the breach of "the duty not to conspire to commit fraud" formed the basis of a similar claim of conspiracy to misrepresent or conceal the health hazards of smoking. *Cipollone*, 505 U.S. at 530, 112 S.Ct. 2608. Accordingly, Johnson's claim of civil conspiracy suffers from the same defects as his fraud claim, i.e. failure to allege reliance on particular fraudulent statements by B & W and failure to meet the requirements of Fed.R.Civ.P. 9(b). Johnson therefore does not state a claim for "joint liability" civil conspiracy.[1]

---

1. Johnson alleges a second theory of civil

conspiracy, Complaint ¶ 63, sometimes

### 5. *Wrongful Death*

 The Massachusetts statute providing for wrongful death claims, M.G.L. c. 229, § 2, "establishes procedures for the recovery of damages the substantive right to which is anchored in the common law." *Marco v. Green,* 415 Mass. 732, 735, 615 N.E.2d 928 (1993). Johnson may thus assert a wrongful death claim on behalf of the decedent that is based upon claims the decedent could have brought herself had she survived. *Cook v. Hanover Ins. Co.,* 32 Mass.App.Ct. 555, 556, 592 N.E.2d 773 (1992).

Johnson bases his wrongful death claim on his claims for negligence, breach of warranty, civil conspiracy, and fraud. Complaint ¶ 71. This Court has concluded, however, that Johnson's complaint successfully states claims only for 1) negligence based on defective design, and 2) breach of the implied warranty of merchantability based on defective design. Johnson's remaining causes of action are either preempted by the 1969 Act and/or fail to state claims upon which relief can be granted. Accordingly, Johnson's wrongful death claim is dismissed except to the extent that it rests on his claims for defective design.

### ORDER

For the reasons set forth in the Memorandum above Defendant's motion to dismiss (Docket No. 5) is ALLOWED, in part, and DENIED, in part, as follows:

1) with respect to Plaintiff's claim of negligence based on failure to warn (Count I), ALLOWED, without prejudice;

2) with respect to Plaintiff's claim of negligence based on defective design (Count I), DENIED;

3) with respect to Plaintiff's claim of breach of express warranty (Count II), ALLOWED, without prejudice;

4) with respect to Plaintiff's claim of breach of the implied warranty of merchantability based on failure to warn (Count II), ALLOWED, without prejudice;

5) with respect to Plaintiff's claim of breach of the implied warranty of merchantability based on defective design (Count II), DENIED;

6) with respect to Plaintiff's claim of breach of the implied warranty of fitness for a particular purpose (Count II), ALLOWED, without prejudice;

7) with respect to Plaintiff's claim of fraud (Count IV), ALLOWED, without prejudice;

8) with respect to Plaintiff's claim of civil conspiracy (Count III), ALLOWED, without prejudice;

9) with respect to Plaintiff's claim of wrongful death (Count V), DENIED as to Plaintiff's claims for defective design in Counts I and II, and ALLOWED, without prejudice, as to the remainder of Counts I and II and all of Counts III and IV.

So ordered.

known as "true conspiracy," *Fleming v. Dane,* 304 Mass. 46, 50, 22 N.E.2d 609 (1939), which occurs when the conspirators, acting in unison, exercise a "peculiar power of coercion" over the plaintiff that they would not have had if they acted alone. *Aetna Cas. Sur. Co. v. P & B Autobody,* 43 F.3d 1546, 1563 (1st Cir.1994). In response to B & W's motion to dismiss, however, Johnson contends that he is alleging only "joint liability" civil conspiracy. Plaintiff's Memorandum of Law in Opposition to the Defendant's Motion to Dismiss at 16. Accordingly, this Court treats paragraph 63 of the complaint as mere surplusage.