**Paul M. JOHNSON, As Executor of the ESTATE OF Maureen P. JOHNSON, Plaintiff,**

v.

**BROWN & WILLIAMSON TOBACCO CORPORATION, Defendant.**

No. CIV.A. 99–40161–NMG.

United States District Court, D. Massachusetts.

Sept. 30, 2004.

Emily S. Bromley, Petrucelly & Nadler, Boston, Burton A. Nadler, Petrucelly & Nadler, P.C., Boston, MA, for Plaintiff.

Matthew C. Baltay, Foley Hoag LLP, Boston, MA, Daniel J. Endick, Chadbourne & Parke, Joseph G. Falcone, Chadbourne & Park, LLP, New York City, David R. Geiger, Foley Hoag LLP, Evan Georgopoulos, Greenberg Traurig, LLP, John H. Henn, Foley Hoag LLP, Boston, MA, Robert S. Pruyne, Chadbourne & Parke, New York City, Laura J. Rowley, Foley Hoag LLP, Boston, MA, Paul G. Rozelle, Porter, Wright, Morris & Arthur, Columbus, OH, Bruce G. Sheffler, Chadbourne & Parke, LLP, David L. Wallace, Chadbourne & Parke, New York City, for Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

Plaintiff, Paul M. Johnson ("Johnson"), as executor of the estate of his wife, Maureen P. Johnson ("decedent"), has brought this products liability action against defendant, Brown & Williamson Tobacco Corporation ("B & W"), claiming that his wife died of lung cancer contracted as a result of smoking defective cigarettes manufactured by B & W. B & W now moves for summary judgment on all remaining claims.

### I. *Factual Background*

The following facts are set forth as alleged in memoranda in support of the motion for summary judgment (Docket Nos. 67 and 73) and the opposition thereto (Docket No. 69).

The decedent began smoking Kool cigarettes, which are manufactured by B & W, in 1965 at the age of 16. For the rest of her life, she smoked between one and two packs of cigarettes per day. In or around August of 1996, the decedent was diagnosed with small cell lung cancer and was informed by her doctors that her pulmonary illnesses were the direct result of smoking cigarettes. The decedent died on April 5, 1997.

Johnson filed the instant action on August 9, 1999 in Massachusetts Superior Court and B & W removed to this Court based upon diversity jurisdiction. The complaint states Counts for: 1) negligence, 2) breach of warranty, 3) civil conspiracy, 4) fraud and 5) wrongful death. Counts I and II are each premised on two theories: failure to warn and defective design.

B & W subsequently moved to dismiss all claims on grounds of express preemption, failure to state of claim under Fed. R.Civ.P. 12(b)(6) and failure to plead fraud with the specificity required by Fed. R.Civ.P. 9(b) (Docket No. 5). This Court dismissed Counts III (civil conspiracy) and IV (fraud) in *Johnson v. Brown & Williamson Tobacco Corp.*, 122 F.Supp.2d 194 (D.Mass.2000) (Docket No. 15). This Court also dismissed Counts I (negligence)

and II (breach of warranty) to the extent they were based on a theory of failure to warn. *Id.* Johnson's remaining claims (Counts I, II and V) are all based on a theory of design defect.

In support of Johnson's argument that Kool cigarettes have been defectively designed, he offers the deposition testimony and affidavit of Dr. William A. Farone ("Dr. Farone"). Dr. Farone alleges that the menthol in Kool brand cigarettes (and presumptively all menthol cigarettes) acts as an anesthetic and cough suppressant causing smoke to be held longer in the lungs. That results, he explains, in the smoker receiving more nicotine. Dr. Farone further alleges that B & W manipulated the nicotine levels of its cigarettes "in a manner that would be sufficient to create and sustain an addiction." Finally, Dr. Farone charges that B & W is involved in a "gentlemen's agreement" with other cigarette companies not to conduct research on its products.

In addition to identifying potential defects in Kool cigarettes, Dr. Farone seeks to demonstrate that B & W could have feasibly offered safer alternatives to the decedent. First, he suggests that Kool cigarettes could have been made safer by removing a number of different compounds, including tar or even tobacco. Second, the doctor suggests that B & W could have chosen to manufacture "safer" low-tar cigarettes, as some other companies attempted to do. Finally, Dr. Farone offers examples of possible smokeless nicotine delivery devices meant to mimic cigarettes. For example, two of his proposed devices would deliver nicotine by means of an aerosol that is inhaled via a "tube" or "generator."

B & W now moves for summary judgment on all remaining Counts. It argues that 1) Johnson has not elicited evidence of a design defect in Kool cigarettes, 2) the dangers of cigarettes have been publicly known for so long that they cannot be considered unreasonably dangerous, 3) Johnson has not offered feasible alternative designs to remedy any defect, 4) the plaintiff's claims are preempted by the Federal Cigarette Labeling and Advertising Act, and 5) the statute of limitations has run on counts I and II.

## II. *Legal Analysis*

### A. Standard of Review

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991), *quoting Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable infer-

ences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. Analysis

■ The Massachusetts Legislature has "transformed warranty liability into a remedy intended to be as comprehensive as the strict liability theories of [many other] jurisdictions." *Back v. Wickes Corp.*, 375 Mass. 633, 639, 378 N.E.2d 964 (1978). *See also Johnson*, 122 F.Supp.2d at 206 (explaining that the same analysis applies to claims of negligence based on design defect and to breach of warranty based on design defect). Under the implied warranty of merchantability, manufacturers have a "duty to design products so that they are reasonably fit for the purposes for which they are intended." M.G.L. c. 106 § 2–314(2)(c); *Kotler v. American Tobacco Company*, 926 F.2d 1217, 1225 (1st Cir. 1990). *Smith v. Ariens Co.*, 375 Mass. 620, 624, 377 N.E.2d 954 (1978). The Massachusetts Supreme Judicial Court has described that standard as being "congruent in nearly all respects with the principles expressed in the Restatement (Second) of Torts § 402A." *Back*, 375 Mass. at 640, 378 N.E.2d 964. As the Restatement makes plain, a plaintiff must show that a product was sold "in a defective condition, unreasonably dangerous to the user ...." *Id.; Rest. (Second) of Torts* § 402A. These requirements will be discussed seriatim.

### I.

■ The plaintiff has the burden of eliciting evidence that the product in question was sold in a defective condition. *Back*, 375 Mass. at 640, 378 N.E.2d 964.

It is insufficient for a plaintiff to allege that an entire class of products is inherently dangerous. *Johnson*, 122 F.Supp.2d at 207; *Herlihy v. R.J. Reynolds Tobacco Corp.*, 1988 WL 73434 *2 (D.Mass.1988). Cigarettes are not defective merely because smoking causes cancer. *See Johnson*, 122 F.Supp.2d at 204.

■ Rather, the law requires a showing that the specific cigarettes consumed by the smoker were defective. *See id.* at 205 ("plaintiff must ... plead that the particular tobacco used in the cigarettes consumed was, itself, bad."). It need be shown that the cigarettes "deviated from the norm in some untold way." *Id.* Johnson argues that his expert, Dr. Farone, has identified several defects in Kool cigarettes, which are addressed in the numbered paragraphs that follow.

■ 1. Dr. Farone asserts that a campaign of false public statements by B & W concerning the addictiveness Kool cigarettes is the requisite design defect. The Court will not long indulge this attempt to resuscitate Johnson's previously-dismissed claims of failure to warn, fraud and conspiracy. *See id.* A design defect can be found *in* the "product," not on the basis of extraneous statements of the manufacturer. *See* M.G.L. c. 106 § 2–314(2)(c); *Back*, 375 Mass. at 640, 378 N.E.2d 964; *Rest. (Second) of Torts* § 402A, cmt. i.

■ 2. Dr. Farone asserts that Kool cigarettes are defective because B & W "designed and manipulated Kool cigarettes to deliver doses of nicotine sufficient to create and sustain consumer addiction." He adds that B & W "enhanced the design of the cigarettes smoked by Mrs. Johnson to accelerate the delivery of tar and nicotine." However, those declarations are utterly devoid of particulars concerning the methods, levels or effects of any enhancements or manipulations. Johnson offers

no supporting evidence, only allegation, and the Court thus discounts it. *Hayes v. Douglas Dynamics,* 8 F.3d ·88, 92 (1st Cir.1993). The court in *Hayes* addressed the point directly:

> [I]n order to defeat a motion for summary judgment an expert opinion must be more than a conclusory assertion ... We are not willing to allow the reliance on a bare ultimate expert conclusion to become a free pass to trial .... 8 F.3d at 92 (citing *Bowen v. Manchester,* 966 F.2d 13, n. 16 (1st Cir.1992)).

Even if he had offered such evidence, Johnson has failed to demonstrate how manipulation of nicotine levels could be considered a design defect. Dr. Farone concedes that if the nicotine level in cigarettes were cut, smokers would simply adjust their smoking to receive the desired dose. Far from being a defect, the presence of a prescribed level of nicotine is exactly what consumers seek.

■ 3. Dr. Farone focuses on the menthol in Kool cigarettes. Menthol, he contends, acts as an anesthetic promoting longer retention of smoke in the lungs of a smoker. He adds that Kool cigarettes are marketed as being "less harsh," possibly due to the menthol content. Dr. Farone speculates that as a result of the menthol, smokers actually consume more nicotine. Johnson suggests that the presence of that chemical constitutes a design defect in Kool cigarettes.

■ Plaintiff's argument fails because the addition of menthol is the purpose and intention of menthol cigarettes, not a defect. Kool cigarettes are advertised as containing menthol and consumers buy them with full knowledge of that fact. Many consumers (decedent included) appear actually to prefer menthol cigarettes to non-menthol cigarettes. A product is defective "only where the product [is sold] *in a condition not contemplated* by the ultimate consumer ...." *Rest. (Second) of Torts,* § 402A, cmt. g (emphasis added). Here, the menthol is not only contemplated, it is sought.

Moreover, Courts and the Restatement agree that cigarettes, though cancer-causing, cannot be ruled generally defective based upon the dangers of smoking. *See Johnson,* 122 F.Supp.2d at 205; *Rest. (Second) of Torts* § 402A, cmt. i. Doing so would impermissibly override the congressional decision to allow their continued sale. *See Lorillard Tobacco Co. v. Reilly,* 533 U.S. 525, 564, 121 S.Ct. 2404, 150 L.Ed.2d 532 (2001); *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 139, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000). Likewise, a plaintiff may not single out menthol cigarettes and label them as being generally defective. To sanction such a claim would be tantamount to imposing the categorical liability that courts have declined to impose. *See Johnson,* 122 F.Supp.2d at 205; *Wasylow v. Glock, Inc.,* 975 F.Supp. 370, 380 (D.Mass.1996).

Finally, Johnson argues that the limited evidence he has elicited of specific design defect is sufficient under the *Herlihy* decision.[1] *Herlihy* held that a cigarette design defect claim survived a motion to dismiss even though the "thrust of the complaint alleged that cigarettes as a whole were unsafe." *Herlihy,* 1988 WL 73434 *1. Johnson asserts that the case at bar is

---

1. Plaintiff's argument aptly demonstrates why his design defect claims are flawed. The crux of Johnson's original argument in this case is a general one: that B & W hid the dangers of smoking from the decedent. This Court addressed that argument, dismissing counts for conspiracy, fraud, and failure to warn, *Johnson,* 122 F.Supp.2d at 205, but plaintiff now attempts recycle that argument into a design defect claim using newly-cited (and sometimes self-contradictory) statements of Dr. Farone.

analogous. *Herlihy* is, however, inapplicable because it dealt with a motion to dismiss under Fed.R.Civ.P. 12(b)(6) where the issue was the sufficiency of the allegation. *See* 1988 WL 73434 *1. Here, on a motion for summary judgment, the issue is whether Johnson has elicited evidence in support of his (properly alleged) claims of design defect. Because that evidence is lacking, plaintiff's claims must fail.

## II.

Even assuming that Johnson had identified a design defect in Kool cigarettes, his claims are still defective because he has not introduced evidence that Kool cigarettes are unreasonably dangerous. To be unreasonably dangerous:

> [A]n article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it with the ordinary knowledge common to the community as to its characteristics ... good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful. *Rest. (Second) of Torts* § 402A, cmt. i.

Accordingly, a plaintiff must show not only a design defect, but also that the defect caused the product to become unreasonably dangerous. *See Kotler*, 926 F.2d at 1224–25.

Johnson focuses on the presence of tar, menthol and manipulated nicotine levels as defects in Kool cigarettes. Those dangers plainly are not "beyond that which would be contemplated by the ordinary consumer." *See Johnson*, 122 F.Supp.2d at 204. Rather, they are well within the ambit of dangers the consumer expects from smoking.

This Court has stated that it is "firmly convinced that the risks of smoking were quite clear to the population at large before 1969." *Id. See also Guilbeault v. R.J. Reynolds Tobacco Co.*, 84 F.Supp.2d 263, 273 (D.R.I.2000). Specifically, "the widespread publicity surrounding the 1964 report by the Surgeon General's advisory committee concerning the health risks of smoking was sufficient to charge all reasonable consumers with general knowledge of such health risks as of at least 1964." *Id.* (citing *Guilbeault*, 84 F.Supp.2d at 273). Other courts have reached similar conclusions. *See Cruz–Vargas v. R.J. Reynolds Tobacco Co.*, 348 F.3d 271, 278–79; *Guilbeault*, 84 F.Supp.2d at 273.

The decedent in this case began smoking in 1965, at least one year after the public became reasonably aware of the dangers of smoking. *See id.* Johnson responds by alleging that B & W "misled" the public such that it would have been "impossible" for the decedent to have been aware of the risks of smoking. Conclusory allegations of that sort are unpersuasive. Johnson provides no evidence that B & W, in fact, misled the public or that the public was unaware of the risks that plaintiff cites. A litigant may not avoid summary judgment by resort to such tactics. *Hayes*, 8 F.3d at 92.

Even if plaintiff presented evidence to support the allegations of deception by B & W, the same conclusion would follow. As discussed above, any attempt to mislead the public would have been counterbalanced by the actions of the Surgeon General to mandate warning labels on cigarette packages and to and warn the public of the dangers of smoking. *See Johnson*, 122 F.Supp.2d at 204. Indeed, B & W points to evidence that Mrs. Johnson herself knew that cigarettes cause cancer and other health problems. Under these circumstances, the Court declines to depart from its recognition of the public awareness of the dangers of smoking. Accordingly, Johnson has not shown Kool

cigarettes to be unreasonably dangerous within the meaning of Massachusetts law.

Johnson's design defect claims must be dismissed because there exist no genuine issues of material fact as to whether the cigarettes smoked by the decedent harbored a design defect, or whether any such defect could be considered unreasonably dangerous. In light of the foregoing, it is unnecessary for the Court to consider B & W's other stated grounds for summary judgment.

**ORDER**

Based upon and in accordance with the foregoing, the motion for summary judgment of B & W (Docket No. 66) is **ALLOWED**. In its motion, B & W requested oral argument but, under the circumstances, that is deemed unnecessary.

**So ordered.**